BUTLER v. DELANO ET AL.

1. **Tax Sale**: ADJOURNMENT OF: WHEN NOT PUBLIC. Where the treasurer announced that the sale of lands for delinquent taxes would be adjourned from day to day and posted a notice to that effect, but instead of resuming the sale and adjourning it upon the following or any day thereafter, he made no further offer of the lands until the agent of the purchaser handed him a list of tracts belonging to delinquent owners, offering in behalf of the person whose name was set opposite each tract to take it for the taxes due, and the treasurer, receiving no better offer, struck off the entire list: *Held*, that such a sale did not constitute a public sale within the meaning of the statute and should be set aside for irregularity.

2. ———: DEED: FRAUD. It is only in a qualified sense that the tax deed is conclusive evidence of the regularity of the sale; it being always competent to show fraud committed by the officer conducting the sale or the purchaser.

*Appeal from Worth District Court.*

TUESDAY, MARCH 21.

THE plaintiff is the owner of the patent title to one hundred and sixty acres of improved land in Worth county, and is in possession thereof. The defendants claim the land by virtue of four tax deeds executed to them by the treasurer of Worth county, pursuant to an alleged sale of the lands on the 12th day of June, 1865, for the delinquent taxes of the years 1859, 1860, 1861, 1862 and 1863.

The plaintiff brings this action to quiet his title, and offers to reimburse defendants for any payments made by them on account of the taxes due on the land described.

The court rendered judgment for defendants. Plaintiff appeals. The facts appear in the opinion.

*Shiras, Van Duzee & Henderson* and *Butler & Smith,* for appellant.

The counties possess the right to sell property for taxes only by virtue of express grant and their powers therein are to be construed strictly. (Blackw. on Tax Titles, 2 ed., 33, 34; *Ham v. Miller,* 20 Iowa, 450.) The county authorities must follow the statutory method of conducting tax sales or their acts are void. (Blackw. on Tax Titles, 34.) The treasurer can only sell for delinquent taxes at public sale, and a fixed time and place after due notice. (Rev., § 763.) The deeds are void because the sale was made upon an unauthorized day, without opportunity for competition, and because it was made in eighty-acre tracts, while the assessment was in forties, to unknown owners. (Blackw., 396; *Dudley v. Tuttle,* 3 Hammond, 504; 1 Story's Eq., § 293.) The execution and delivery of the deed do not bar appellant from showing that the premises were not in fact sold for the taxes delinquent thereon. (*Case v. Abel,* 28 Iowa, 280; *Thomas v. Stickle,* 32 Id., 78.) The right to assess and collect taxes will not by implication include the right to sell property for such delinquent tax. (*Ham v. Miller,* 20 Iowa, 453.) Parties are presumed to in-

tend the necessary and legal consequences of their acts. (*Toof v. Martin*, 13 Wall., 48; *Cunningham v. Freeborn*, 12 Wendell, 240; *Waterbury v. Sturtevant*, 18 Id., 353.)

*Ed. Collin, Griffith & Knight* and *D. C. Cram*, for appellees.

The tax deeds are conclusive evidence that the adjournments were as provided by law and that the sales were regular, after proper notice. (*Allen v. Armstrong*, 16 Iowa, 508; *McCready v. Sexton*, 29 Id., 356.) They are also conclusive that each forty-acre tract was offered and sold separately. (*Rima v. Cowan*, 31 Iowa, 125; *Bulkley v. Callanan*, 32 Id., 461.) The deed is conclusive that the sale was conducted as recited therein. (*McCready v. Sexton, supra; Ware v. Little*, 35 Iowa, 234.)

DAY, J.—The evidence shows that at the close of the annual sale in October, 1864, the treasurer announced that the sale was adjourned from day to day, and he posted up notices of that fact. Subsequently he offered the delinquent lands for sale as often as, and whenever, any one came to buy, and in this manner he made sales February 23d, 1865, February 28th, 1865, May 2d, 1865, May 29th, 1865, and June 12th, 1865, on which day the lands in controversy were sold. The delinquent lands were not offered for sale at any other time. The only notice that was given of this sale was the notice that was posted on the door that the tax sale was adjourned from day to day. But one notice of the adjourned tax sale was posted, and that was posted at or soon after the annual sale of October, 1864. J. U. Perry, who was employed in the treasurer's office, acted as agent for the defendants and various other parties in bidding in lands at the sale in question, June 12th, 1865. He handed the treasurer a list of all the lands he proposed to take, with the names of the different parties he intended to buy them for written opposite, and then he verbally offered to take each respective tract for the party whose name was written opposite, for all the taxes, interest and penalties due thereon.

Butler v. Delano.

The treasurer offered the lands for sale by holding up the list, but without reading over the entire list, or announcing all the descriptions publicly, and saying he offered each of the tracts for sale, and no party offering to take a less amount of each tract, the whole of each tract was struck off to each party whose name was set opposite to the tract on the list. Afterwards Perry, by request of the treasurer, made the entry of sale upon the tax sale register. This manner of conducting a tax sale cannot meet with too severe condemnation. It lacks every essential element of a legal sale. It was made both at a time and in a manner wholly unauthorized.

Section 763, of the Revision, requires the county treasurer to offer lands on which taxes are delinquent at public sale. Section 765 requires the treasurer to offer for sale, separately, each tract or parcel of real property advertised for sale. Section 767 requires the treasurer to continue the sale from day to day as long as there are bidders, or until the taxes are all paid. Section 773 is as follows: " When all the parcels of real property advertised for sale shall have been offered for sale as provided for in this act, and a portion thereof shall remain unsold for want of bidders, it shall be the duty of the treasurer to adjourn the sale to some day not exceeding two months from the time of adjournment, due notice of which day shall be given at the time of the adjournment, and also by keeping a notice thereof posted in a conspicuous place in the treasurer's office. On the day fixed for the reopening of the sale, the same proceedings shall be had as provided for by this.act in relation to the sales commencing on the first Monday of October; and further adjournments shall be made, from time to time, not to exceed two months, as provided in this section, and the sales shall thus be continued until the next regular annual sale, or until all the taxes have been paid." The course pursued shows an utter disregard of these provisions.

At the close of the annual sale in October, 1864, the treasurer announced that the sale was adjourned from day to day, and he posted up a notice of that fact. Instead of resuming the sale on the following day, and continuing it from day to day, as the terms of the

1. TAX SALE: adjournment of: when not public.

adjournment would import, no further offer of the lands was made until parties came in to buy, which occurred on the 23d day of February, 1865. No other or further adjournment was made, but sales were made whenever parties came into the treasurer's office and wanted to buy. Thus the sale was continued at irregular intervals from October, 1864, until June 12, 1865. During all this time no adjournment to a day named, as provided in section 773, was made. But, without adjournment or notice, the sale was kept open for eight months, and parties were allowed to come into the treasurer's office and have a sale whenever they wished to buy. A sale must be made at the time fixed by law, or at a time to which it is regularly adjourned. There is no authority for posting a notice that the sale is adjourned from day to day, and then marking lands sold whenever parties express a desire to buy, throughout the year.

The sale lacked every requisite of a public sale. At 9 o'clock in the morning, no proclamation being made that there would be a sale, and no notice being given, except a notice posted eight months before that the sale was adjourned from day to day, a clerk in the treasurer's office handed the treasurer a list of lands, with the names of persons set opposite them, for whom he wished to buy, and then verbally offered, on behalf of each person whose name was set opposite a tract, to take it for the taxes and penalties. The treasurer did not publicly read over the list nor announce all the descriptions. He did not, therefore, publicly announce what land he was selling. Of course there could have been no public announcement of the amount of taxes due on each parcel, as that would have involved the necessity of publicly reading the descriptions. Hence, no opportunity for competition was offered; if any one was present to compete. But the strong probability, from the time of the sale, is that the treasurer and his clerk were the only persons present.

We cannot sanction such a procedure. The case coming nearest this in its facts is *Leavitt v. Watson*, 37 Iowa, 93. But in that case, for aught that was shown, the sale was held at a time authorized by law. The treasurer gave public notice

at the court house door, that there would be a sale of lands for taxes. It does not appear but that each piece of land was publicly offered for sale, and the amount of taxes due thereon stated. The only irregularity shown was that the persons wishing to bid handed in a list of the lands on which they were willing to pay the taxes due, and, if there was no competition, such bid was received and the land treated as sold, without publicly crying the bid, or publicly striking off the lands. That case goes to the very verge in sustaining a tax title, but not, perhaps beyond what the law creating presumptions in favor of the validity of tax sales requires.

To sustain this sale we must go much beyond that case, and hold that a legal tax title may be acquired at a sale in all 2. ——: essential respects private in its character, or that _deed: fraud._ the tax deed is conclusive proof that a private sale is a public sale. In some cases it is said that the deed is conclusive evidence of the manner of sale. Whilst this may be true in all the cases to which the language has been applied, yet it is true in a qualified and not in a general sense. It is always competent to show fraud committed by the officer selling or the purchaser. Revision, Section 784; *Kerwin v. Allen*, 31 Iowa, 578; *Corbin v. Beebe*, 36 Iowa, 336; *Everett v. Beebe*, 37 Iowa, 452; *McCready v. Sexton*, 29 Iowa, 356.

The statute requires that lands upon which taxes are delinquent shall be sold at public sale on a day prescribed, or on some other day to which the sale is regularly adjourned. The purpose of a public sale is to secure competition, and the payment of the taxes for as small a portion of the delinquent lands as possible. Any arrangement between the treasurer and the purchaser, which substitutes a private for the public sale which the law contemplates, operates as a fraud upon the owner of the land, and renders the sale invalid. We hold that the sale in question was private, and hence fraudulent, and that the deed is not conclusive evidence that it was public and legal.

The cause will be remanded to the court below for an account-

ing of the amount of taxes and interest, paid by defendant, upon the lands, which plaintiff offers to pay, and for which defendant should have judgment.

REVERSED.