TRUESDELL V. GREEN ET AL.

1. **Railroads:** TAX IN AID OF. A tax in aid of a railroad, procured to be voted by representations that it would only be enforced as against non-resident tax payers, will not be sustained.

2. **Tax Titles:** VOID: BONA FIDE PURCHASER. Where the treasurer, after the adjournment of a tax sale, executed certificates, without a sale, to a pretended purchaser, pursuant to a prior private agreement with him, the tax titles and deeds based upon such certificates were absolutely void, and a purchaser thereunder, by warranty deed, for value and without notice, would not be protected as an innocent purchaser.

3. ————: ESTOPPEL. Where the tax payer did not know prior to the construction of the railroad, that the work was being done on the faith of the tax voted in its aid, he is not estopped from denying the validity of the tax.

*Appeal from Cerro Gordo Circuit Court.*

WEDNESDAY, DECEMBER 7.

THE plaintiff brings this action to quiet his title to certain land in the petition described. The plaintiff claims that he is the absolute owner of the real estate in question, in virtue of a sale thereof under execution as the property of one Westbrook, and a sheriff's deed executed pursuant to said sale.

The defendants for answer in substance allege that the property in controversy was, on the 2nd day of October, 1871, sold at tax sale to one James Thompson, for delinquent railroad taxes of 1870; that the certificate of purchase was assigned to A. N. Hobson, to whom a treasurer's deed was executed May 27, 1876; that on January 11, 1877, Hobson conveyed said premises by warranty deed to the defendant Thomas L. Green, and that on the 27th of August, 1877, Thomas L. Green conveyed said land by warranty deed to the defendant George Mantz. The plaintiff, for reply, amongst other things, alleged that the railroad tax was levied by reason of an election at which the vote in favor of levying the tax was fraudulently procured, and that the premises were not sold at a public tax

sale as provided by law. The court decreed in favor of the plaintiff. The defendants appeal.

*Ainsworth & Hobson*, for appellant

*Richard Wilber*, for appellees.

DAY, J.—I. The tax in question was voted in Geneseo township, Cerro Gordo county, in aid of the Central Railroad of

1. RAILROADS: tax in aid of.

Iowa. Prior to the time the tax was voted one Judge Woodbury, of Marshalltown, a director of said railroad company represented to a tax payer of said township that the company would want a five per cent tax in aid of the road, that they should not want it of the residents who had paid the tax in 1868, but wanted to get it of the non-residents who, by the adverse decision of the Supreme Court in 1869, had evaded payment. This representation was communicated to the other voters, and the reasons urged for voting for the tax were that the residents who paid the tax of 1868, would receive immunity from the tax they were then voting. Upon the day of the election one H. W. McNiel appeared as the representative of the company and said the object was to get the residents to vote for a tax, not that they would have it to pay, but the company wanted to get it out of the speculators. It was a general talk among the voters that the railroad company wanted to get the tax from the non-residents. These representations made the voters willing to vote the tax. Nearly all of the certificates of sale issued for the delinquent taxes of residents, were afterward, without consideration, returned to them, pursuant to these representations.

It seems to us too clear for question that a tax procured in this way cannot be sustained. It will not do to allow a tax to be voted upon the property of a township by offering and securing to residents, who alone can vote, immunity from the burden imposed. The only protection afforded to property from ruinous impositions arises from the fact that such bur-

dens will not likely be imposed by those who must share in bearing them. Let the principle once be recognized that the parties who vote taxes may be exonerated from paying them, and there is no power which can save the property of non-residents from confiscation. It may be that the promise itself was illegal, and could not be enforced. But even if this should be conceded it could not render the tax valid as to a non-resident who could not participate in the election.

II. Before the sale for delinquent railroad taxes occurred, one James Thompson, representing the railroad company, told the treasurer that if nobody offered to bid in the lands and pay the money, he would pay the fees for making the certificates, and would see that he was furnished a proper receipt from the railroad company for the amount of the tax, but that he did not want the certificates if any one else would take them and pay the money. The treasurer waited until after the sale was completed to see if somebody would not buy the lands and pay the money. Nobody bid upon the lands, and the treasurer made out certificates to Thompson for all the lands, in pursuance of his offer before the sale. The amount of taxes due on each piece was not stated, nor were the lands publicly announced for sale. Thompson was not present at the sales, nor any one representing him. There was here in fact no sale of the lands whatever. After the sale was over, no one having bid upon the lands, the treasurer simply made out certificates of purchase to Thompson for all the lands, pursuant to an offer made by Thompson before the sale began, of which no one knew anything except Thompson and the treasurer. Thompson paid no money, but simply took the lands on behalf of the railroad company, and executed receipts for the tax. Such a proceeding cannot be upheld without sanctioning the grossest violations of the law. See *Butler v. Delano*, 42 Iowa, 350; *Thompson v. Ware*, 43 Iowa, 455.

III. The defendant Mantz claims that he is entitled to pro-

*2. TAX TI-
TLES: void:
bona-fide
purchaser.*

tection as a *bona-fide* purchaser, under a warranty deed, without notice. He testifies that he knew nothing of the manner in which the tax was voted, or the sale conducted, or Green obtained his title. The defendant relies upon *Van Shaick v. Robbins*, 36 Iowa, 201; *Sibley v. Bullis*, 40 Id., 429; *Ellis v. Peck*, 45 Id., 112; *Huston v. Markley*, 49 Id., 162, and *Martin v. Ragsdale*, Id., 589.

*Van Shaick v. Robbins*, *Sibley v. Bullis*, and *Huston v. Markley*, are all cases where there was a public sale in fact, but a fraudulent combination was entered into to prevent competition. It was held that the sales were voidable and not void, and that the title should be protected in the hands of an innocent purchaser for value. In *Ellis v. Peck*, it was held that the fact that the land was bid off at the tax sale by the deputy treasurer, rendered the title voidable but not void, and that an innocent purchaser for value would be protected. In *Martin v. Ragsdale*, 49 Iowa, 589, for the purposes of the case it is conceded that the sale was not publicly made, and the defendant is protected as a *bona fide* purchaser from the holder of the treasurer's deed, under the doctrine of *Van Shaick v. Robbins*, and *Sibley v. Bullis*, *supra*. The facts upon which the decision is based are not stated, and in order to determine the value of the case as a precedent, it is necessary to consider the facts attending the sale then under consideration. The record upon which that case was determined shows that the sale was conducted in the following manner: All the lands on which the tax was delinquent for 1867 were advertised for sale on the first Monday of October, 1868. On that day the treasurer declared all such lands as offered for sale to the highest bidder, that is to the person who would pay the tax on a piece of land for the least amount thereof. The sale was adjourned from the first Monday of October to the first Monday of November, and all lands not sold when first offered were offered at the next adjourned sale, and so on, adjourning from month to month. All lands unsold for taxes

of 1867 on March 1, 1869, were offered at that adjourned sale, at which time the lands in controversy were sold to one Brown, and a certificate of purchase was issued to him therefor. The treasurer raised the window, stuck his head out and cried out that the sale was open for the sale of all lands delinquent for taxes of 1867 and previous years. The manner of selling was simply to declare all lands and lots in Union county on which the tax was delinquent for 1867 or previous years, now offered for sale to the highest bidder, the highest bidder being the person who would pay the tax, interest and cost for the least amount of the land. The treasurer did not go over by description and offer each piece to the highest bidder, but the party wishing to buy selected from the list any piece remaining unsold, and, if no other bid was offered, it was struck off to him at the amount of the tax, interest and cost. In this way the lands in controversy in that case were sold to Brown. Now it appears that what was done in *Martin v. Ragsdale* differs materially from the proceedings in this case. The essential points of difference are, that in *Martin v. Ragsdale* what was done was done openly and publicly, and during the time fixed for the prosecution of the sale, whereas, what was done in the case at bar was done secretly and privately between the treasurer and Thompson, and after the time for the sale had passed, and the sale had been adjourned.

The case of *Martin v. Ragsdale* falls nearly under the facts, and fully under the principle of *Leavitt v. Watson*, 37 Iowa, 93, whilst the case at bar comes under the principle of *Butler v. Delano*, 42 Iowa, 350. Now, whilst *Martin v. Ragsdale*, was correctly decided under the facts involved, it is based solely upon *Van Shaick v. Robbins* and *Sibley v. Bullis*. We do not feel like extending the principle of those cases to a case where, as in the case at bar, no sale at all was made, but after the adjournment of the sale the lands were simply marked sold, pursuant to a private arrangement between the pretended purchaser and the treasurer. If the treasurer can, by merely

issuing a certificate of purchase, without any offering of the lands for sale, place it in the power of the holder of the certificate to procure a deed and convey a good title to an innocent purchaser for value, the result would be an entire nullification of the provision of the statute respecting sales, and an end to all the protection it is destined to afford. It is claimed that the records showed the execution of a treasurer's deed valid upon its face, and that a purchaser from the grantee in such a deed ought to be protected. But if a deed were forged, the records would show an apparently valid conveyance to the grantee. Yet no one would claim that the real owner could be divested of his title through a conveyance to an innocent purchaser by the holder of a recorded, forged deed. Even when a deed was deposited as an escrow, and its possession was fraudulently obtained, it was held that it passed no title, and that an innocent purchaser from the grantee would not be protected. See *Everts v. Agnes*, 6 Wis., 453; see also *Fisher v. Beckwith*, 30 Wis., 55.

A purchaser always runs some risk, against which he must protect himself by exacting covenants of warranty. The defendant cannot, we think, be protected as an innocent purchaser.

IV. Defendant claims that plaintiff is estopped to insist upon the invalidity of the tax. It is claimed that objection

3. ———: estoppel. should have been made *in limine*, before the railroad completed its road. The defendant cites and relies upon *Patterson v. Baumer*, 43 Iowa, 477, and *Butler v. Board of Supervisors*, 46 Id., 326. In both cases the parties seeking relief knew that expenditures were being made on the faith of the tax. No such fact is shown in this case. It does not appear that the owner of the lands in question at the time of the vote of the tax and pretended sale, has ever been a resident of Iowa, or that he knew anything about the construction of the road in question. The doctrine of estoppel is not applicable.                                        AFFIRMED.