STATE OF NEBRASKA, EX REL. ALFRED L. SNOW, v. PETER FARNEY, TREASURER.

FILED MARCH 29, 1893.   No. 5814.

1. **Tax Sales**: COMPETITION.   It is the policy of the law to encourage competition at the sale of property for delinquent taxes.

2. ——: DUTY OF OFFICER.   The provision of the revenue law for the keeping open of the public sale of lands for delinquent taxes is mandatory, and a substantial compliance therewith is demanded of the officer conducting such sale.

3. ——: ——: UNLAWFUL ADJOURNMENT.   Where the public sale for delinquent taxes was opened at 9 o'clock A. M., and adjourned *sine die* at the expiration of an hour and a half thereafter, the property all remaining unsold for want of bidders, and the treasurer in charge thereof refused to entertain bids for the property advertised which were tendered at 3 o'clock P. M. of the same day, *held*, not a compliance with the statute which requires the sale to be kept open from 9 o'clock A. M. until 4 o'clock P. M.

4. ———: RIGHT OF PERSON DESIRING TO BID TO DEMAND OFFER
    TO SELL: MANDAMUS TO TREASURER. One who in good
    faith attends upon a public sale of property for delinquent taxes
    at the time named in the advertisement and requests the treas-
    urer to offer the delinquent property for sale, and demands the
    right to bid therefor, has such an interest therein as will entitle
    him to prosecute proceedings by *mandamus* to compel the treas-
    urer to discharge his duty by offering said property for sale.

ORIGINAL application for *mandamus* to compel the re-
spondent, as treasurer of Hamilton county, to offer at pub-
lic sale all lands and lots upon which the taxes assessed
for the year 1891 remain delinquent. *Writ allowed.*

*Harlan & Harlan* and *A. W. Agee*, for relator.

*J. H. Broady, contra.*

POST, J.

This is an original application for a writ of *mandamus*,
and is submitted upon exceptions by both the relator and
the respondent to the findings of the referee to whom the
issues were submitted for trial, also upon the motion of the
relator for judgment upon the findings. The pleadings
are too voluminous to be set out at length in this opinion,
but the issues are apparent from the findings of the referee,
which are as follows:

"1. That the defendant Peter Farney is now, and has
been during all the times mentioned in the pleadings and
testimony in this cause, the treasurer of Hamilton county,
Nebraska.

"2. That taxes were duly levied for the year 1891 upon
the several descriptions of lands and lots in said county
after the same had been duly assessed, and that there were
due and delinquent a large amount of taxes on said lands
and lots as stated in the plaintiff's petition; that due and
legal notice was published by the defendant that he would
on the first Monday in November, to-wit, November 7,

1892, between the hours of 9 o'clock in the forenoon and 4 o'clock in the afternoon, at the court house in said county, offer at public tax sale all lands upon which the taxes levied for city, county, and other purposes for the previous year remained due and unpaid; that said notice was in all respects as required by law.

"3. That at 9 o'clock, standard time, on November 7, 1892, in his office at the place mentioned in said notice, the defendant read in the ordinary tone of voice the formal part of said notice of tax sale, and also read the first description of lands mentioned in said notice and inquired if there were any bidders therefor. Receiving no bids for that tract, he enquired if there were any bidders for any other tracts mentioned in said notice. No bids were made. After waiting about one and one-half hours the defendant declared the sale closed, and made his return to the county clerk. A copy of said return is marked Exhibit A and attached to the defendant's answer. There were present during said one and one-half hours the defendant and his son Charles J. Farney. The testimony does not show that any other person was present. No public outcry of the sale was made other than as hereinbefore stated.

"4. That said Charles J. Farney represented at said time the following named loan companies having mortgages on real estate in Hamilton county, Nebraska, to-wit: Iowa Loan & Trust Company; De Witt Bank; Fidelity Loan & Trust Company; New England Loan & Trust Company; Nebraska Mortgage Company; Security & Investment Company; Equitable Loan & Trust Company; Grand Island Banking Company; L. W. Tulleys, Trustee Globe Investment Company; Eastern Banking Company; Omaha Loan & Trust Company; Nebraska Loan & Trust Company; Concordia Loan & Trust Company. That said Charles J. Farney was present to bid on said lands in case other bidders were present, his purpose and intention being to protect the interest of the loan com-

panies he was representing. Immediately after making
his return to the county treasurer the defendant agreed
with Charles J. Farney to make out, as soon as convenient,
to the several loan companies represented, certificates of tax
sale at private sale for lands in which they were so inter-
ested, and it was also agreed that in the meantime if any
land-owner so desired, they might pay the taxes on the
lands so owned by them and no certificates should be issued
for lands on which the taxes had been so paid. No money
was deposited or produced by the loan companies or either
of them or by their representative. No certificates of tax
sale have been made by the defendant to any one, the
issuance of certificates having been prevented by the in-
stitution of these proceedings. Between the dates Novem-
ber 19, 1892, and December 27, 1892, both dates inclusive,
the owners thereof have paid the taxes on the several de-
scriptions of land set out in the certificate of the defendant
Peter Farney shown in the transcript of this case marked
Exhibit L.

"5. That on or about November 1, 1892, one Phillip
Burt left with the defendant $500 under an agreement that
he should bid on lands offered at public sale, and if not
present and the lands were not sold at public sale the de-
fendant would consider him as a bidder after the several
loan companies had taken the lands upon which they had
mortgages.

"6. On November 5, 1892, and being the Saturday be-
fore the time fixed for the sale, A. S. Harlan, representing
the plaintiff, met the defendant in front of the court house
and inquired as to the time of sale and practice of the de-
fendant in making sale. He was then informed by the
defendant that the sale would begin at 9 o'clock on the
Monday morning following and would be kept open for
an hour or two, when return would be made to the clerk,
and sales made thereafter at private sale. Harlan replied,
stating that he wanted to buy and would try and be there

by the time the sale opened.    At the same time the defendant told Mr. Harlan that other parties had already filed lists for lands they desired.    On Monday, November 7, 1892, Mr. Harlan arrived at Aurora about 11 o'clock in the forenoon, having been delayed by the lateness of arrival of train; he went directly to the treasurer's office and inquired of the person in charge if the sale was closed, and was answered that it was.    He returned again to the treasurer's office at about 3 o'clock in the afternoon of the same day in company with Mr. Agee, attorney for relator. Both Mr. Harlan and Mr. Agee requested the defendant to open up the sale and give them a chance to bid for the relator.    The defendant refused, saying that the sale had been closed and he had made his return to the county clerk. At this time both Mr. Harlan and Mr. Agee insisted that they had the right to bid and that the action of the defendant in the matter was illegal.    The defendant insisted that his action was in accordance with custom and refused to open the sale or receive bids.

   " 7.  On the following day, November 8, 1892, and being general election day, about 3 o'clock in the afternoon, Mr· Agee, representing the relator, accompanied by Messrs. Musser and Peterson, went to the office of the defendant in Aurora, which was then open with the defendant in charge.    Mr. Agee produced a list of the lands upon which the taxes, as shown by the treasurer's book, were delinquent and unpaid, which list had been previously made from the treasurer's books by himself and Mr. Harlan, assisted by others, including the clerks in the office of defendant, and Mr. Agee also at the same time produced a large roll of money and asked that the sale be opened and that he be allowed to bid thereat, and offered to pay all taxes, interest, penalties, costs, and charges against each of the tracts of land mentioned in the list for the one-half portion of each of said tracts respectively, and asked that certificates be issued to the relator for the same.    The defendant refused

to open the sale or to receive the bids, insisting that the sale was closed, and that the return had been made to the county clerk.

" 8. On the day following, to-wit: November 9, 1892, Mr. Agee, attorney for relator, met the defendant in the hall of the court house and near the office of the treasurer and delivered to him the paper, a copy of which is attached to defendant's answer and marked Exhibit E, which exhibit is made a part of this report. The defendant at once read the paper, and in response to an oral question propounded to him by Mr. Agee, stated that he adhered to his former decision and that the public sale had been closed and that he would not reopen it.

" 9. That the defendant had no pecuniary interest in refusing to open the sale as requested by relator nor in denying to him the privilege of bidding, and that the defendant acted throughout the entire transaction in good faith, in accordance with the custom of previous years, and as he honestly believed his duty required him to act, and so believing treated said loan companies and Phil. Burt as preferred and prior bidders.

" 10. That Carl Farney, Charles Farney, and Charles J. Farney, mentioned in the pleadings and testimony, is one and the same person, and the son of the defendant herein.

" 11. That Peter Farney, Jr., and P. A. Farney, mentioned in the testimony as deputy treasurer, is one and the same person, and son of the defendant herein.

" 12. That during the times mentioned in the pleadings and testimony said P. A. Farney was the duly acting deputy treasurer of Hamilton county, acting under a written appointment bearing date January 4th, 1891, but which appointment was not filed in the office of the county clerk until the 30th day of December, 1892, and after the taking of the oral testimony in this cause. That said Charles J. Farney had also acted as deputy county treasurer prior

to the transaction which is the basis of this action. No revocation of the appointment of said Charles J. Farney as deputy treasurer of said county, nor any bonds for either of said deputies, are on file in the office of the county clerk of said county.

"13. At the hearing in this cause the relator, by his attorney, A. W. Agee, relinquished all claim to bid on any lands on which the owners thereof had paid the taxes thereon to the treasurer and for which receipts have been issued.

"14. By oral agreement of the parties the certificate attached to the oral testimony, marked Exhibit I, made by the county clerk of Hamilton county, Nebraska, under date January 6, 1893, was admitted in evidence and treated the same in all respects as if the facts therein stated had been orally testified to by said county clerk."

The exhibit to which reference is made in the 8th finding is the following:

"Aurora, Nov. 9, 1892.

" Peter Farney, Treasurer Hamilton County, Neb.: The undersigned, Alfred L. Snow, hereby requests that you offer for sale at public auction, as provided by law, each and every tract and parcel of land in said county upon which taxes remain delinquent for the year 1891, and which has been advertised for sale by you, and to give to the undersigned a reasonable opportunity to bid thereon by keeping said sale open by adjournment from day to day if need be, until each and every one of said tracts shall be offered for sale for all taxes, interest, penalties, and costs thereon, and the undersigned hereby now offers and agrees to pay all taxes, interest, penalties, and costs and charges chargeable against each of said tracts or parcels of land respectively, for the one-fourth portion of each of such tracts respectively, and he hereby requests that you issue to him certificates of purchase as required by law, unless a better bid is made, in

which event the undersigned desires an opportunity to and will make further or better bid.

"ALFRED L. SNOW,
"By A. W. AGEE,
"*His Attorney and Agent.*"

The exhibit mentioned in the 14th finding is a certificate from the county clerk of Hamilton county, under date of January 6, 1893, to the effect that the only appointment of P. A. Farney or Peter A. Farney, on file in his office as deputy county treasurer for said county, bears date of January 4, 1891, and filed December 30, 1892, and that there is on file in said office no evidence that the appointment of Chas. J. Farney, as deputy treasurer, has ever been revoked. It is not contended that the transaction on November 7 was a substantial compliance with the requirements of the law, and it is plain that it was not.

By section 109 of the revenue law it is provided: "On the first Monday of November in each year, between the hours of 9 o'clock A. M. and 4 P. M., the treasurer is directed to offer at public sale, at the court house, or place of holding court in his county, or at the treasurer's office, all lands on which the taxes levied for state, county, township, village, city, school district, or any other purpose for the previous year still remain unpaid, and he may adjourn the sale from day to day, until all the lands, and lots, or blocks have been offered."

That the foregoing provisions are mandatory does not admit of a doubt. Similar language will not be held to be permissive merely where it is plain that the legislature intended to impose a duty rather than confer a privilege. (*Kelly v. Morse*, 3 Neb., 224 ; *People v. Buffalo County*, 4 Id., 150; *Follmer v. Nuckolls County*, 6 Id., 204; Cooley, Taxation, 214.)

It is the policy of the law to encourage publicity and competition at the sale of property for delinquent taxes, for two sufficient reasons: first, to secure payment of the

taxes levied to carry on the state and municipal governments, and second, to prevent the needless sacrifice of the property of taxpayers. The sale is conducted by public officers sworn to faithfully discharge their duties, and generally in the absence of the owners of the property offered; hence the law exacts of such officers the utmost good faith. It has been frequently held that where a treasurer fails to publicly offer property but allows proposed purchasers to furnish lists in writing of the lands for which they wish to bid, with the price offered therefor, to be subsequently entered by him on his books, the transaction does not amount to a sale and is at least voidable at the election of the property owner, if not absolutely void. (Cooley, Taxation, 339; *Young v. Rheinecher,* 25 Kan., 366; *Butler v. Delano,* 42 Ia., 350; *Miller v. Corbin,* 46 Id., 150.) The treasurer in this case, while proceeding in good faith, seems to have acted upon an entire misconception of his responsibility to the public as well as his duty to taxpayers and bidders. The fact that his course was in accordance with the custom of the office is, upon legal grounds, no more defensible than such custom is creditable to the sagacity and business methods of his predecessors.

2. Assuming, as we must, that the failure to offer at public sale was a radical one, and the return made within two hours of the time for the opening thereof was without authority of law, what are the rights of the relator? It is argued by the respondent that a writ of *mandamus* will not be allowed on the application of a mere proposed bidder. It is said that since neither the taxpayers nor the public are complaining the loss of anticipated profits by one wishing to bid is at most *damnum absque injuria.* It was held by this court in *Richardson County v. Miles,* 7 Neb., 123, that *mandamus* will lie to compel a county treasurer to issue certificates of purchase to the best bidder at tax sale. See also to the same effect, Cooley, Taxation, 742, and authorities cited. It has also been frequently held that

38

*mandamus* is the proper remedy to compel public officers to let contracts to the lowest bidders. (See *People v. Buffalo County*, 4 Neb., 150; *Follmer v. Nuckolls County*, 6 Id., 204; *State v. Saline County*, 19 Id., 253; *Boren v. Commissioners of Darke County*, 21 O. St., 311.)

It does not appear, either from the pleadings or the findings of the referee, that the relator is a resident or taxpayer of Hamilton county. There is, in fact, no pretense by him of an intention to promote any interest of the general public or the taxpayers of the county. The right sought to be enforced is therefore essentially a private one, although the duty sought to be enforced is one imposed in the interest of the public at large. The rule is apparently well settled that a private individual will be entitled to the writ of *mandamus* only in case he has some private right or particular interest to be subserved, or some particular right to be preserved or protected, independent of that which he holds in common with the public at large. (*Wellington, Petitioner*, 16 Pick. [Mass.], 85; Maxwell, Code Pleading, 233; Merrill, Mandamus, 238.)

The application of the above rule to the case at bar is, however, attended with more difficulty. When the case was under consideration, the writer seriously doubted whether the relator had such an interest as would entitle him to maintain the action. But upon reflection we all agree that this case is within the reasoning of the cases cited from this court. We are not to be understood as intimating that every person proposing to purchase at treasurer's sale for delinquent taxes would be entitled to the writ. But one who in good faith, in person or by agent, attends on the day designated by statute for the public sale, with the intention of purchasing, is within the rule, and may by *mandamus* compel the treasurer to discharge his duty by opening the sale and affording bidders an opportunity to compete for the property advertised as delinquent. The reasoning of the present chief justice in *People v. Buffalo*

*County, supra,* is quite applicable to the controversy. For instance, he says : " To permit commissioners to accept plans and bids thereon at the same time, they accepting such as they approve, prevents all competition, and opens the door to corruption, favoritism, and fraud, and is against the policy of the law." A wanton refusal to expose property for sale after it has been advertised at the expense of the county would be a malfeasance in office, and a fraud alike upon the taxpaying public and parties who had attended with the intention of bidding therefor. The remaining question is how the respondent shall be required to proceed. It is plain that he was not a purchaser at the public sale, since it had been adjourned *sine die* before his arrival, and the treasurer refused to even consider his bids. He is not therefore entitled to certificates of purchase. The right of the treasurer to sell property at private sale for delinquent taxes depends upon a previous offer at public sale and a return by him to the county clerk as provided by sections 112 and 113, revenue law. Since there was a failure to offer at public sale, it follows that the treasurer is now without authority to sell at private sale. (*State v. Helmer*, 10 Neb., 25.) His fault was in the inception of the controversy when he summarily adjourned the public sale and refused to the relator an opportunity to bid for the property advertised. The argument that the power to offer at public sale has been exhausted, and that another sale at this late date would necessitate a needless expense to the respondent, is without force. Whatever costs or expenses may attend a second notice and sale are but the legitimate fruits of the disregard of a duty plainly enjoined by law, and of which the respondent cannot now complain. The character of the title which a purchaser would acquire through a sale in obedience to a judgment of the court is not necessarily involved in this controversy. It is sufficient that lapse of time is no obstacle to relief by *mandamus* when sought on the ground of

the refusal of a public officer to discharge so plain a duty. (Merrill, Mandamus, 79, 192.)

It follows that a peremptory writ of *mandamus* should issue requiring the respondent to offer at public sale, to the best bidders therefor, all lands and lots upon which the taxes assessed for the year 1891 remain delinquent, after giving notice for the time and in the manner provided by law.

WRIT ALLOWED.

THE other judges concur.