STATE OF NEBRASKA, EX REL. JOHN J. GILLILAN ET AL., V. HOME STREET RAILWAY COMPANY ET AL.

FILED FEBRUARY 6, 1895. No. 6542.

1. **Mandamus: PRACTICE.** Parties to *mandamus* proceedings should pursue the practice established by the Code of Civil Procedure. The practice of attacking the application for the writ by motion or demurrer is one which will not be encouraged.

2. ———: CORPORATIONS: PARTIES. Stockholders of a corporation, merely as such, are not proper parties respondent in a proceeding to compel the corporation by *mandamus* to perform a corporate act.

3. ———: PLEADING. The relator in a *mandamus* proceeding must charge directly all facts necessary to entitle him to the writ. Inferences in his favor will not be drawn from vague or ambiguous language.

4. ———: ———. Inasmuch as the allowance of a writ of *mandamus* rests largely in the discretion of the court, and the writ will be refused where the proceeding is trivial or vexatious, averments showing a special interest in the relator will not be stricken out as immaterial, even in a case where it is not necessary to show such interest.

ORIGINAL application for *mandamus* to compel the respondents to restore a portion of an abandoned street railway line and to maintain and operate the same. *Denied.*

*Leese & Starling,* for relators.

*William G. Clark, contra.*

IRVINE, C.

This is an original application for a writ of *mandamus* to compel the respondents to restore a portion of an abandoned street railway line, and to maintain and operate the same. The application alleges that the relators are citizens of the United States and of the state of Nebraska, and residents and taxpayers of the city of Lincoln; that the Capital Heights Street Railway Company, from February, 1887, until December, 1890, operated and maintained a street railway in the city of Lincoln, with all facilities necessary to accommodate the traveling public, from the corner of Twelfth and O streets to the corner of Randolph and Fortieth streets, by a route specially described in the application; that the relators are the owners of a large number of lots and tenement houses abutting upon or adjacent to the streets along which said car line passed; that at the time of locating said line, "in consideration of constructing, operating, and maintaining a street car line and service thereon on Randolph street aforesaid, the property owners along Randolph street aforesaid paid to the said street car company a large sum of money, the exact amount of which is unknown to the relators; that among the number your relators paid to the said company the sum of $1,400 for the construction, operation, and maintenance of the street car line and service aforesaid; that after the said street railway was put in running order and was in operation your relators expended many thousand dollars in erecting buildings adjacent to said line of street railway. Said buildings are still owned by the relators. That about December, 1890, the Capital Heights Street Railway Company consolidated all its stock, property, and franchises

with the stock, property, and franchises of the Lincoln
City Electric Railway Company; that the said last men-
tioned company operated and maintained the aforesaid
street railway from December, 1890, until the year 1892
as an independent line of street railway ; that during the
year 1892 said last mentioned company was reorganized
under the name of the Home Street Railway Company, one
of the respondents named in this petition; that the said
Home Street Railway was operated and maintained along
the streets hereinbefore mentioned in direct competition
with the respondent, the Lincoln Street Railway Company,
a corporation duly organized and existing under the laws
of this state; that the said last mentioned company is now
operating and maintaining a street railway line on O
street, and upon several other streets in the said city of
Lincoln, and at all times hereinbefore mentioned did oper-
ate and maintain such line of street cars upon such last
mentioned streets; that the respondent, F. W. Little, is the
president of the aforesaid Lincoln Street Railway Com-
pany, and is now and has been for several years last past
acting as such president.

"Your relators say that at all times herein mentioned
the Home Street Railway Company and the Lincoln Street
Railway Company have been independent and competing
lines of street railway.

" Your relators further say that for the purpose of sti-
fling the competition between the Home Street Railway
Company and the Lincoln Street Railway Company, and
for the further purpose of monopolizing all the street rail-
ways in the city of Lincoln, the respondent, the Lincoln
Street Railway Company, purchased of, and from, the
Home Street Railway Company all the stock, property and
franchises of the said Home Street Railway Company, in-
cluding all that part of said line formerly known as the
Capital Heights Street Railway, paying to the said Home
Street Railway Company the sum of $95,000 in the bonds

of the said respondent, the Lincoln Street Railway Company; that for the purpose of concealing the true state of facts surrounding said purchase, the stock of the said Home Street Railway Company was transferred to F. W. Little, the respondent herein, who holds the same in trust for the respondent, the Lincoln Street Railway Company."

The application then charges that shortly after said purchase a portion of said line was abandoned and soon after another portion, until there was a complete abandonment of the whole line; that rails and ties of a portion of the line have been torn up and carried away by the respondents and put in use in other parts of the city by the Lincoln Street Railway Company, and that the respondents now threaten to remove the remainder of the rails and ties; that these acts have been performed for the purpose of forfeiting the franchise; " that the relators are now compelled to walk one-half mile to obtain street car service from their property on Randolph and G streets; that by reason of the abandonment of such street car service on Randolph street and G street the property of the relators and of all citizens living and owning property along the aforesaid street car line of the Home Street Railway Company has become greatly depreciated in value; that a large number of relators' houses, situated in close proximity to said car line, have become vacant by reason of the abandonment of said line, and the property of the relators has been lessened in value many thousands of dollars."

To this application the Lincoln Street Railway Company and F. W. Little demur, and the Home Street Railway Company files a motion to strike out from the application certain averments, being those in regard to the relators' ownership of property near the car line, those in relation to the contribution of money for its construction, and those in regard to the injury to the relators' property by reason of the abandonment of the line.

The regular procedure in *mandamus* is to make the

application by motion supported by affidavit, whereupon the court may grant the writ without notice, may require notice to be given, or may grant a rule to show cause why the writ should not be allowed. (Code, sec. 649.) When the right to the writ is clear, and it is apparent that no valid excuse can be given for failure to perform the duty, a peremptory writ may be issued. In other cases the writ issued in pursuance of the motion is in the alternative. (Code, sec. 648.) The alternative writ and the answer‚thereto constitute the pleadings in the case. No other pleadings are permitted. (Code, sec. 653.) When a rule to show cause has been issued and the return thereto presents issues of fact, the court cannot try such issues at that stage of the proceedings, but in such case, if any writ issue, it must be the alternative writ and issues must thereon be regularly made up and tried. (*American Water - Works Co. v. State*, 31 Neb., 445.) It would seem, therefore, that the practice of attacking the application by motion or demurrer is irregular. This court has, however, permitted cases to be finally heard in pursuance of a rule to show cause, on the application and return thereto, and the parties having agreed to so proceed herein we shall treat the motion and demurrer as if they were regular, merely remarking that the practice is not one to be encouraged, and that the irregular nature of the proceeding renders the application to the case of established rules of pleading somewhat difficult. By the demurrer and motion it is sought to present to the court the question of the right to compel by *mandamus* the operation of a street railway, the circumstances necessary to an enforcement of such a right, the relations and duties to the public of a corporation which has succeeded another in the control of a street railway, and the nature of the interest, as public or private, which permits a relator to maintain such an action. To aid us in solving these important questions the respondent has filed a type-written brief, and the relator has filed a type-written

list of authorities which have been of service in spite of
some inaccuracies in the titles of cases and the volume,
name, and page of reports.

In support of the demurrer of the Lincoln Street Rail-
way Company and F. W. Little two points are urged.
First, that the allegations of the application do not show
any connection of the demurring respondents with the line
of road referred to which charges them with the duty of
maintaining it; second, that the application nowhere
charges that public interests have suffered by reason of
the abandonment of the road, or that there is a public de-
mand for its operation, and that private interests alone are
insufficient to sustain the action.    On the first point the
allegations are that the Lincoln Street Railway Company
has been, at all times mentioned, operating a line of street
railway on several streets in Lincoln; that Little is its
president; that the Home Street Railway Company and
the Lincoln Street Railway Company have been independ-
ent and competing lines, and that, for the purpose of sti-
fling competition between them and monopolizing all the
railways in Lincoln, "the Lincoln Street Railway Company
purchased of and from the Home Street Railway Com-
pany all the stock, property, and franchises of the said
Home Street Railway Company, including all of that part
of said line formerly known as the Capital Heights Street
Railway, paying to the Home Street Railway Company
the sum of $95,000 in the bonds of the said respondent,
the Lincoln Street Railway Company; that for the pur-
pose of concealing the true state of facts surrounding such
purchase, the stock of the said Home Street Railway Com-
pany was transferred to F. W. Little, the respondent herein,
who holds the same in trust for the respondent, the Lincoln
Street Railway Company."    In 1889 an act was passed to
enable street railways to unite their roads by consolidation,
purchase, sale, or by subscription to or purchase of capital
stock. (Session Laws, 1889, ch. 38 ; Compiled Statutes, ch.

72, art. 7, secs. 6–10.) By this act three methods of union were provided. The first section permitted consolidation by means provided in the act where lines of two companies have been located and constructed so as to afford connected or continuous lines and routes of travel. The method and effect of such consolidation are prescribed in detail. Section 5 of the act authorizes any company existing in pursuance of law to lease or purchase any or all of any other street railway constructed by any other company. The same section also authorizes any company to purchase the capital stock of another. The application charges no facts from which consolidation could be inferred. It does charge a purchase by the Lincoln Street Railway Company of all the "stock, property, and franchises" of the Home Street Railway; but follows this allegation with the further averment that for the purpose of concealing the true state of facts surrounding said purchase, the stock of the Home Street Railway Company was transferred to Little, and that Little holds the same in trust for the Lincoln Street Railway. The relator in *mandamus* must show clearly his right to the writ, he must charge directly the facts entitling him thereto, and inferences in his favor will not be drawn from vague, ambiguous, or uncertain language which leaves his right in doubt. We think the averments referred to must be interpreted as charging merely that the purchase was by the acquisition of the stock of the Home Street Railway Company, and not by a transfer by that corporation to the Lincoln Street Railway Company, or to Little, of its tangible property. So far as the respondents demurring are concerned, then, the only allegations to connect them with the subject-matter of the action are that Little holds the stock of the Home Street Railway Company and that he holds it in trust for the Lincoln company. Where the act is a duty incumbent on a corporation, the writ may, according to circumstances, be directed to the corporation itself, to the select body of officers whose duty it is to perform

the act, or to the corporation and that body jointly. (Merrill, Mandamus, sec. 237, and cases cited.)   But conceding this to be a case where a writ directed both to the corporation and its controlling officers would be proper, still the controlling officers are presumably the directors of the corporation and not the stockholders, and we know of neither authority nor principle permitting the stockholders, merely as such, to be made respondents in such a case.   No other relation between either the Lincoln company or Little and the Home company is disclosed by the application, and the demurrer must, therefore, be sustained.   On the other point argued the position of the respondents is that the writ will not issue to protect merely a private right; that the ground of intervention in all such cases is that the company has undertaken to perform a public function and to satisfy a public demand and that it will only be compelled to act when it is shown that such public demand exists and that the public will be incommoded by abandonment; that the test as to whether or not there is a public demand for the services is whether the traffic, provided the services were rendered, would be sufficient to at least pay operating expenses and some profit to the stockholders, and that it is not alleged in the application that such service is practicable, or that such public demand exists.   These are questions of a grave and far-reaching character, and as the demurrer must be sustained upon the first ground we shall not undertake to decide the latter questions at this stage of the proceedings.

The motion of the Home Street Railway Company seeks to eliminate from the application all the averments by which it is sought to show a special interest in the relators by virtue of their contributing funds to the company which constructed the road, and by virtue of their owning property along its line.   The application does not show that the money contributed was the consideration for any promise for any special operation of the line for any definite period.

It is simply stated that the money was paid in consideration of constructing, operating, and maintaining the line. These averments are entirly too indefinite to found thereon any right to have the line operated at this time by a company other than the donee, and further than this, we quite agree with counsel for the respondents that the writ of *mandamus* cannot be used to compel the specific performance of a merely private contract. The writ lies only to compel the performance of an act which the law specifically enjoins as a duty resulting from an office, trust, or station. (Code Civil Procedure, sec. 645.) Where the duty is one arising by specific injunction of law from the office, trust, or station, then it may be enforced, even though its enforcement operates merely in favor of the individual relator; but the fact that respondents occupy such office, trust, or station, does not make every contractual obligation into which he enters a duty specially enjoined by law arising therefrom. The duty must be one arising from the office, trust, or station, to be enforced by *mandamus*, and not one arising merely through private acts and contracts. The relator must trace his right through the public duty of the respondents and not its private obligations. (*Crane v. Chicago & N. W. R. Co.*, 74 Ia., 330; *People v. Rome, W. & O. R. Co.*, 103 N. Y., 95.) Still it does not follow that because an action of this character could not be based alone on the allegations which respondents seek to strike out that such allegations are altogether immaterial. It is true that it has been repeatedly held in this state that where the question is one of public right and the object is to enforce a public duty, the relator need not show that he has any special interest in the result. It is sufficient to show that he is a citizen, and as such has an interest in the execution of the laws. (*State v. Shropshire*, 4 Neb., 411; *State v. Sterns*, 11 Neb., 104; *State v. Van Duyn*, 24 Neb., 586.) Such also is the doctrine of the supreme court of the United States in *Union P. R. Co. v. Hall*, 91 U. S., 343. The case last

cited was an application for a *mandamus* to compel the Union Pacific Railway Company to operate its road between Council Bluffs and Omaha, and it was shown that the relators were merchants in Iowa having frequent occasion to ship goods over the road. In *State v. City of Kearney*, 25 Neb., 262, it was said that the dividing line between the cases requiring the relator to show a special interest, and those requiring no interest to be shown is that interest must be shown where private or corporate rights are affected, but need not be shown where the relator is a mere informer, to procure the enforcement of a public duty. In that case the object of the writ was to compel the removal of a frame building maintained contrary to a fire ordinance. The relator did not show that he suffered any special injury by reason of the maintenance of the building and relief was denied for that reason. In *State v. Farney*, 36 Neb., 537, it is said: "That a private individual will be entitled to the writ of *mandamus* only in case he has some private right or particular interest to be subserved or some particular right to be preserved or protected, independent of that which he holds in common with the public at large."

The allowance of a writ of *mandamus* rests largely in the discretion of the court. Even where the duty is essentially a public one, and where it is not necessary to show any special interest, the court would undoubtedly be justified in denying the writ if the proceedings appeared to be vexatious or trivial. In the case of the *Union P. R. Co. v. Hall, supra,* the writ was allowed at the instance of relators, who were merchants in Iowa and frequent shippers on the respondent's road. It is hardly possible that it would have been allowed at the suit of a citizen of Maine who had no business relations with the company and would not be in anywise affected by the result. So here, if the question is to be considered one of public right it does not follow that the court would interfere by *mandamus* at the instance of any citizen of Lincoln having no special inter-

est in the event. By way of showing an interest alone and not by way of establishing a duty against the respondents, the averments are material and the motion is, therefore, overruled.

It may be remarked that this case was instituted before the decision in *State v. Lincoln Gas Co.*, 38 Neb., 33, and has been entertained as an original action for that reason.

JUDGMENT ACCORDINGLY.