RALSTON, COUNTY AUDITOR, ET AL. *v.* STATE EX REL. HORN, TRUSTEE

[No. 27,493. Filed June 23, 1941.]

*John F. Linder* and *Carl Seet,* both of Indianapolis, for appellants.

*David F. Smith,* of Indianapolis, and *Parr, Parr & Parr,* of Lebanon, for appellee.

RICHMAN, J.—The judgment appealed from mandated the auditor and treasurer of Marion County to do certain ministerial acts required by statute when there has been a sale of real estate for delinquent taxes. If there was a completed sale, the judgment must be affirmed. This question is raised by error assigned on the overruling of a demurrer to the complaint and overruling motion for new trial in which it is alleged that the evidence is insufficient to sustain the decision. A better case was stated by relator in the complaint than was proved. The question will therefore be considered as arising on the evidence.

Some thirty parcels of land in Marion County are involved. The taxes thereon had been delinquent for several years. At the regular delinquent tax sale in 1936 and again in 1937 each lot had been offered with no bid received for an amount equal to the taxes, penalties and interest. These lots were listed in the notice for the regular 1938 tax sale as "returned delinquent for non-payment of taxes for the year 1935, payable in 1936 and prior years" which notice stated that the lots "or so much thereof as will satisfy the amount of taxes and assessments due thereon, respectively, from the owners thereof, with penalty and charges due at the time of sale, will be sold at the front door of the Court House, in the City of Indianapolis, Marion County, State of Indiana, by the Treasurer of said County on the second Monday in April, being April 11, 1938, at 10 o'clock A. M. within the

hours prescribed by law, and continued from day to day until sold."

Whether they were actually offered for sale on that or any subsequent day before November 14, 1938, does not appear. On the latter day relator's attorney, Mr. Smith, called on the county treasurer at his office and asked to bid on a number of lots advertised in the 1938 notice and upon Smith's request a deputy treasurer and clerk carrying certain records went to the front door of the court house where Smith asked first to bid on a lot in Eagle Ridge. The bid was for the full amount of taxes, interest and penalty and was accepted. It does not appear that this lot had been unsuccessfully offered for sale at the two prior regular tax sales.

After this transaction was noted Mr. Smith, for relator, bid $2.00 for each of the lots here involved, asserting that right under § 64-2204, Burns' 1933, § 15809, Baldwin's 1934. The tax liability on each lot far exceeded the amount of the bid. The deputy treasurer consulted the county attorney, upon whose advice the bids were refused. The bid price was tendered and rejected, and the tender was kept good by payment into court when the action was begun on the 15th day of May, 1939. The record is silent as to any other proceedings by relator or the county officers with reference to these lots.

Mr. Smith, the only witness, testified on cross-examination as follows:

Q. "Now on this occasion that you called at the treasurer's was there any particular reason why you went on that day?"

A. "I think there was a particular reason. I am not sure now what it was. The treasurer had been very busy with one thing or another. I think I tried to select a day when there was the least activity there. We had the thing under consideration for several weeks."

Q. "At this particular day the treasurer wasn't holding any special sale, no one there other than you and the parties you were representing?"
A. "There were none of the people there."
Q. "No public auction?"
A. "No."
Q. "No one offering to bid on the lots or crying a sale or anything of that kind?"
A. "No, just day to day, the sale was contemplated by statute."
Q. "Just ordinary sale that they held and have held every year?"
A. "The treasurer on request has always been willing to sell to you at any time by agreement or not. Frequently he will sell them to you at the treasurer's office."
Q. "You are speaking now of a sale as advertised for the full amount of tax?"
A. "Yes."

The General Assembly of 1941 repealed the statute upon which relator relies. It was in effect as early as 1901 (see *State ex rel.* v. *Leich* [1906], 166 Ind. 680, 78 N. E. 189) and was re-enacted and incorporated in chapter 59 of the Acts of 1919, which was a codification of all general property tax laws in 339 sections. Those numbered 222 to 227 inclusive and 259 to 262 inclusive pertain to the sale of real estate for delinquent taxes and must be read together and in harmony with basic principles well stated in 3 Cooley, *Taxation* (4th Ed.), § 1424, as follows:

"The sale must be a public sale with opportunity for open competition. This is a universal requirement; and it may seriously be questioned whether the legislature possesses the power to provide for extinguishing the owner's title by a secret or private sale. The sale itself is a proceeding to perfect a statutory forfeiture. The legislature probably has authority to declare a forfeiture of property

taxed for delinquency in making payment; but in such an act the sovereign power of the state is pushed to the very limit, and it is believed that a statute which comes short of such a declaration, and leaves the title still in the owner, could not provide for divesting him of it by means of administrative proceedings secretly taken, and of which neither actual nor constructive notice was to be given to him. A public sale is the usual and proper course; and this, in order to constitute any protection to the owner, must be so made as to invite competition."

The 1919 act, fairly construed and fairly administered, meets the requirements suggested by Judge Cooley. Section 259, which applies to the regular annual sales, provides for adequate notice by posting and publication, the wording of the notice being prescribed. In the original act the date of the sale was fixed as the second Monday in February "and continuing from day to day thereafter until all are *offered*." In 1937 the date was changed to the second Monday in April and the word "offered" was changed to "sold." § 64-2202, Burns' 1933 (Supp.), § 15807, Baldwin's Supp. 1937. The next section has always read:

"On the day mentioned in the notice, the county treasurer shall commence the sale of such lands, and shall continue the same from day to day until so much of each parcel assessed or belonging to each person assessed, shall be sold as will pay the taxes, interest and charges thereon. . . ."

From sales made pursuant to these sections there is the right to redeem.

Section 222 provides that property upon which taxes have accumulated in excess of the assessed value and which has been offered at not less than two public tax sales without bid in the amount of such taxes, may be sold at any time "at public sale to the highest bidder"

after giving notice of such sale as under § 259. There is no provision for redemption.

Section 224 permits the treasurer, when land has been offered for sale for three years with no bid for the accumulated taxes, to certify the facts to the prosecuting attorney with an order to sue all parties interested as in foreclosure cases and under § 225 the property is sold as on execution to the highest bidder for cash. Of course the action itself and the sale are upon notice. There is no express provision for redemption.

Section 261 relied on herein reads as follows:

> "Whenever any lands have been or shall hereafter be offered for sale for delinquent taxes, interest and penalty by the treasurer of the proper county for any two (2) successive years and no person shall have bid therefor a sum equal to the delinquent taxes thereon, interest and penalty provided by law, then such county treasurer shall, at the next regular tax sale of lands or (for) delinquent taxes, sell the same to the highest bidder, and the purchaser thereof shall acquire thereby the same interest therein as is acquired by purchasers of other lands at such delinquent tax sales."

From sale thus made the land may be redeemed as under § 260.

It is to be noted first that every sale except under § 261 requires notice. This requirement was probably omitted because the sale must be made at the "regular tax sale" for which specific notice is prescribed. But that notice says nothing about bids for less than the amount of the accrued taxes. So there is no actual notice of the offering at the high bid but only the constructive notice given by the statute itself.

The "regular tax sale" may be started on the day advertised and continued from day to day until all lands advertised are sold. But there is no specific provi-

sion for such "day to day" sales in § 261. The right to continue may be inferred only from the fact that the "regular tax sale" may be so continued.

Both sections require auction sales, the former in express terms and the latter by implication from the fact that it is a public sale to the "highest bidder." The word "highest," considered grammatically, implies at least two lower bids or bidders. Perhaps the author of the section was not a strict grammarian. But, in any view, the word indicates that there shall be competitive bidding.

Such competition might reasonably be expected on the first day of the regular tax sale which usually is well attended. It is not to be expected after the advertised lots have all been offered which in most counties is accomplished within an hour or two of the first day. In Marion County, of course, where several thousands of lots are advertised their offering takes a longer time. But not seven months.

Considering the principles expressed by Judge Cooley, the statutes construed in the light of those principles, and the circumstances disclosed by the evidence, we are satisfied that the attempted sale herein was not such as the Legislature intended to permit by the statute on which this action is based. If it was public it was not competitive. It had none of the indicia of an auction. The treasurer apparently had ceased making active efforts to sell, if he had ever done so after the first day of the regular sale. Relator's attorney sought him in his office. The deputy and clerk went to the courthouse door only at relator's request. A day was selected "when there was the least activity." It was not a day to which the sale had specifically been adjourned. The record shows but one bidder and but one bid. And it was then and is now insisted that when

that bid was made its immediate acceptance was obligatory and the sale was ended. All these circumstances point to an attempted purchase by relator in its nature private rather than public and in no real sense an auction.

An early Iowa case, *Butler* v. *Delano* (1876), 42 Iowa 350, 353, recites a somewhat similar factual situation as follows:

"At the close of the annual sale in October, 1864, the treasurer announced that the sale was adjourned from day to day, and he posted up a notice of that fact. Instead of resuming the sale on the following day, and continuing it from day to day, as the terms of the adjournment would import, no further offer of the lands was made until parties came in to buy, which occurred on the 23d day of February, 1865. No other or further adjournment was made, but sales were made whenever parties came into the treasurer's office and wanted to buy. Thus the sale was continued at irregular intervals from October, 1864, until June 12, 1865. During all this time no adjournment to a day named, as provided in section 773, was made. But, without adjournment or notice, the sale was kept open for eight months, and parties were allowed to come into the treasurer's office and have a sale whenever they wished to buy. A sale must be made at the time fixed by law, or at a time to which it is regularly adjourned. There is no authority for posting a notice that the sale is adjourned from day to day, and then marking lands sold whenever parties express a desire to buy, throughout the year.

"The sale lacked every requisite of a public sale. At 9 o'clock in the morning, no proclamation being made that there would be a sale, and no notice being given, except a notice posted eight months before that the sale was adjourned from day to day, a clerk in the treasurer's office handed the treasurer a list of lands, with the names of persons set opposite them, for whom he wished to buy, and then verbally offered, on behalf of each person whose name was set opposite a tract, to take it for the taxes and penalties. The treasurer did

not publicly read over the list nor announce all the descriptions. He did not, therefore, publicly announce what land he was selling. Of course there could have been no public announcement of the amount of taxes due on each parcel, as that would have involved the necessity of publicly reading the descriptions. Hence, no opportunity for competition was offered, if any one was present, to compete. But the strong probability, from the time of the sale, is that the treasurer and his clerk were the only persons present."

The Iowa statute was more specific than ours. But the underlying principle was the same, that the sale should be public and should be competitive. The Iowa court refused to "sanction such a procedure" as that recited because the sale was "in all essential respects private in its character." While in our case the participants went to the courthouse door, which gave a semblance of publicity, it does not appear that any one was present other than Mr. Smith and the two, perhaps, three persons from the treasurer's office and later at their call the county attorney. Certainly there was no other bidder because no one knew until Smith asked for the alleged sale that one was to be held at that hour, or on that day, or even in that month.

For the reasons given we think that the officer was justified in refusing to be a party to the sale, even though he did not put it on those grounds but on the insufficient ground that the amount offered was too little. Other arguments presented need not be noticed.

The judgment is reversed and as it seems unlikely that in a new trial any substantially different facts can be adduced, the trial court is directed to enter judgment for appellants.

NOTE.—Reported in 34 N. E. (2d) 930.