THE PEOPLE *ex rel.* JULIA LARSON *et al.*, Plaintiffs-Appellants, *v.*
EDWARD J. ROSEWELL, Treasurer and Ex-Officio County Collector of
Cook County, Defendant-Appellee.

First District (2nd Division)    Nos. 79-1086, 79-1217 cons.

Opinion filed September 2, 1980.

Bernard Allen Fried, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Paul P. Biebel, Jr., and Michael F. Baccash, Assistant State's Attorneys, of counsel), for appellee.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

This appeal is a consolidation of two separate actions involving the construction of section 235a of the Revenue Act (Ill. Rev. Stat., 1978 Supp.,

ch. 120, par. 716a), commonly referred to as the Scavenger Act. At issue is whether the Scavenger Act's provision for the publication by the county collector of "an advertisement giving notice of the intended application for judgment for sale of all tracts of lands and lots upon which all or part of the general taxes for each of 5 or more years are delinquent" is directory or mandatory, such that the county collector could choose to omit from the advertisement certain properties because actions for the unpaid taxes were pending against the owners of those properties.

For reasons hereinafter set forth, we reverse the judgment of the circuit court of Cook County.

Because the nature of the question presented for review does not require an elaborate recitation of the factual bases for each action herein consolidated, an abbreviated version will suffice.

Approximately 100 parcels of property upon which the general taxes were delinquent for the year 1977 and for at least four years prior thereto were omitted by the county collector from his advertisement giving notice of the intended application for judgment for sale pursuant to the Scavenger Act. Plaintiffs-appellants Julia Larson and others filed a petition for a rule to show cause why the county collector "should not be held to comply with" the provisions of the Scavenger Act and include in his advertisement those 100 parcels. The trial court dismissed the petition with prejudice finding that "[t]he proper construction would be to view [section 235a] as directory rather than mandatory, and permit [the county collector] to use his judgment in utilizing any appropriate method of dealing with tax delinquent property."

Objector-appellant, Northern Illinois Industrial Properties, Inc., filed an objection to the county collector's application for judgment and order of sale requesting that the trial court dismiss the application or modify the application to include the omitted 100 parcels. The trial court held "that the duties imposed on the County Collector under the provisions of the Scavenger Act, Section 235a, as amended, of the Revenue Act, are not mandatory but discretionary" and accordingly overruled the objection.

The Revenue Act of 1939 (Ill. Rev. Stat. 1977, ch. 120, par. 482 *et seq.*) provides two basic methods to enforce the payment of taxes levied upon real property: an *in rem* proceeding against the property; and an *in personam* proceeding against the owner. The *in rem* proceeding encompasses two different and distinct statutory actions. The first type of *in rem* proceeding commonly referred to as the annual tax sale, is authorized by section 225 of the Revenue Act (Ill. Rev. Stat. 1977, ch. 120, par. 706). Such a sale for the full amount of delinquent taxes may occur "[a]t any time after the first day of September next after all of such delinquent taxes on lands and lots shall become due in any year, * * *." The second type of *in rem* proceeding is an action instituted pursuant to section 235a of the Revenue

Act (Ill. Rev. Stat. 1977, ch. 120, par. 716a) which is commonly referred to as the Scavenger Act. Section 235a, unlike section 225, requires that tax delinquency continue for a period of five years or more. Property subject to the Scavenger Act is sold to the highest bidder, even though the bid may be less than the full amount of the unpaid taxes. Section 275 of the Revenue Act (Ill. Rev. Stat. 1977, ch. 120, par. 756) authorizes an action by the county board to recover from the owner of tax delinquent property which has been forfeited to the State[1] the full amount of taxes due.

Normally the entire tax liability for real estate would be met through a judgment and sale of the property pursuant to section 225. (*People v. Chicago Title & Trust Co.* (1979), 75 Ill.2d 479, 486, 398 N.E.2d 540.) However, in *People v. Chicago Title & Trust Co.*, our supreme court at pages 486-87 acknowledged the limitations of the tax sale.

> "[These cases] have arisen however, because, for an increasing number of inner-city parcels, the marketable price is well below the outstanding tax bills. (See J. Lawlor, *Real Property Tax Delinquency and the Rehabilitation of Multi-Family Housing Stock in Chicago, Illinois: The Role of the Collection Provisions of the Illinois Revenue Act*, 26 De Paul L. Rev. 1 (1976).) There simply are no buyers willing to pay taxes in order to obtain the property. As a consequence, the property has been forfeited to the State and the tax bills remain unpaid."

The Revenue act apparently anticipates that some property will not be purchased at the annual tax sale and therefore will be forfeited to the State. As a result supplementary statutory procedures such as the action for unpaid taxes and the scavenger sale were enacted to serve as a "back stop" for property which was not purchased at the annual tax sale.

Section 275 which authorizes the action for unpaid taxes provides in pertinent part:

> "The *county board* may, *at any time*, institute suit in a civil action in the name of the People of the State of Illinois in the circuit court for the whole amount due for taxes and special assessments on forfeited property; * * *." (Emphasis supplied.)[2]

Section 235a, the Scavenger Act, provides in pertinent part:

> "At the same time the County Collector annually publishes an advertisement giving notice of the intended application for judgment for sale of lands and lots for unpaid general taxes as provided in Section 225 of this Act, he shall in counties with a population of

---

[1] Section 246 of the Revenue Act (Ill. Rev. Stat. 1977, ch. 120, par. 727) provides that "[e]very tract or lot so offered at public sale [the annual tax sale], and not sold for want of bidders * * * shall be forfeited to the State of Illinois * * *."

[2] Section 27a of the Revenue Act (Ill. Rev. Stat. 1977, ch. 120, par. 508a) imposes liability upon the "owner" of real estate for unpaid taxes on that land.

2,000,000 or more, and shall in other counties if the county board by resolution so orders, also publish an advertisement giving notice of the intended application for judgment for sale of all tracts of lands and lots upon which all or a part of the general taxes for each of 5 or more years are delinquent as of the date of the advertisement. In no event, however, may there be more than 2 consecutive years without a sale under this Section. The term delinquent also includes forfeitures. The County Collector shall include in the advertisement and in the application for judgment for sale under this Section the total amount of all general taxes upon those tracts of land or lots which are delinquent as of the date of the advertisement. However, in lieu of a single annual advertisement and application for judgment for sale under this Section the County Collector may, from time to time, beginning on the date of the publication of the advertisement giving notice of the intended application for judgment for sale of lands and lots for unpaid general taxes as provided in Section 225 of this Act and prior to the first day of August of the next year, publish separate advertisements and make separate applications, in each which advertisement and application shall be included the tracts of lands and lots required to be sold pursuant to this Section which are described in one or more volumes of the delinquent list. Such separate advertisements and applications shall, in the aggregate, include all the tracts of land and lots which otherwise would have been included in the single annual advertisement and application for judgment for sale pursuant to this Section."

Section 235a also provides that "[t]he remedy herein provided is in addition to other remedies for the collection of delinquent taxes."

The general rule governing whether the provisions of statute are to be construed as mandatory or directory was enunciated in *French v. Edwards* (1871), 80 U.S. (13 Wall.) 506, 511, 20 L. Ed. 702, 703, and expressly adopted by our supreme court in *People v. Jennings* (1954), 3 Ill.2d 125, 127, 119 N.E.2d 781, and in *Andrews v. Foxworthy* (1978), 71 Ill.2d 13, 19-20, 373 N.E.2d 1332, as follows:

"There are, undoubtedly, many statutory requisitions intended for the guide of officers in the conduct of business devolved upon them, which do not limit their power or render its exercise in disregard of the requisitions ineffectual. Such, generally, are regulations designed to secure order, system and dispatch in proceedings, and by a disregard of which the rights of parties interested cannot be injuriously affected. Provisions of this character are not usually regarded as mandatory unless accompanied by negative words importing that the acts required shall not be done in any other manner or time than that designated. But when the requisitions

prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise."

In *People v. Jennings* the State sued the defendant to recover personal property taxes for 1951. However, the list of personal property assessments for 1951 had not been published as ordained by section 103 of the Revenue Act (Ill. Rev. Stat. 1949, ch. 120, par. 584).[3] The court, quoting from *Lyon v. Alley* (1889), 130 U.S. 177, 185, 32 L. Ed. 899, 9 S. Ct. 480, opined at pages 127-28:

" 'The provisions of statutes as to the form and mode of assessments, as to tax lists, and the place where the tax lists are to be deposited, are, according to the highest authority, designed for the benefit of the taxpayers and the protection of their property from sacrifice.' "

In holding that the provisions of section 103 were mandatory, the *Jennings* court reasoned at page 128:

"Publication of the assessment roll is clearly not designed for the guidance of officers or the maintenance of order, system and dispatch in proceedings. Its purpose, like that of provisions concerning notice, is to afford the taxpayer information and an opportunity to ascertain whether the assessment is excessive or disproportionate. In view of its nature, therefore, the requirement is *prima facie* mandatory rather than directory * * *."

■■ We believe that an analysis of the distinction between mandatory and directory statutes (particularly those prescribing conduct of public officials), together with a close examination of the language, nature and purpose of the Scavenger Act, considered in light of the above authority, indicates that the provisions of the Scavenger Act are to be construed as mandatory.

■■ The Scavenger Act itself contains the words "shall * * * publish." The use of the words "shall" or "must" is generally regarded as mandatory. (*Andrews v. Foxworthy*, at 21.) However, the term "shall" does not have fixed or inflexible meaning. It can, in fact, be construed as meaning "may," depending on the legislative intent. However, "[w]here the word is employed with reference to any right or benefit to anyone and the right or benefit depends upon giving a mandatory meaning to the word, it cannot be given a permissive meaning * * * [Citations.]" (*Clark v. Patterson*

---

[3] Section 103 provides that the appropriate officer "shall publish the assessment of personal property in full" in a public newspaper on or before July 10.

(1905), 214 Ill. 533, 539, 73 N.E. 806; *cf. Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 272, 140 N.E.2d 293; 73 Am. Jur. 2d *Statutes* §22 (1974).) Thus, proper interpretation of the provision cannot simply be based upon the language; it must be grounded upon the "nature, objects and the consequences which would result from construing it one way or another." *Carrigan v. Illinois Liquor Control Com.* (1960), 19 Ill.2d 230, 233, 166 N.E.2d 574.

■■ In summary, when a statute prescribes the performance of an act by a public official or public body, the question of whether it is mandatory or directory depends upon its purpose. If the provision merely directs a manner of conduct for the guidance of the officials or specifies the time for the performance of an official duty, it is directory, absent negative language denying the performance after the specified time. If, however, the conduct is prescribed in order to safeguard a person's rights, which may be injuriously affected by failure to act within the specified time, the statute is mandatory. *Andrews v. Foxworthy*, at 21; *Carrigan v. Illinois Liquor Control Com.*, at 233; see 72 Am. Jur. 2d *State & Local Taxation* §709 (1974).

Provisions for publication and notice are designed for the benefit of the taxpayers. Publication under the Scavenger Act appears to have been designed not for the guidance of public officers but to afford taxpayers notice that all or part of the general taxes upon their property for each of five or more years are delinquent and that their property is subject to the judgment and sale provisions of the Scavenger Act. Publication was also designed to afford the taxpayers an opportunity to object to the proposed sale as provided in section 235 of the Revenue Act (Ill. Rev. Stat. 1977, ch. 120, par. 716) and to protect "their property from sacrifice" (*Jennings*, at 128). In light of the nature and purpose of the publication requirement, therefore, we must conclude that the provisions of the Scavenger Act are mandatory and require strict compliance.

Our interpretation also appears to be in agreement with an opinion issued by the Illinois Attorney General in 1943. (1943 Ill. Op. Att'y Gen. 220.) The Attorney General's opinion was requested as to whether it would be compulsory upon all counties, regardless of population, to comply with the provisions of section 235a. It was the opinion of the Attorney General "that the legislature contemplated that the provisions of the section were to be construed as mandatory." (1943 Ill. Op. Att'y Gen. 220, 224.) In so opining the Attorney General noted that section 235a also provides that " 'the remedy herein provided shall be in addition to other remedies for the collection of delinquent taxes.' " (1943 Ill. Op. Att'y Gen. 220, 224.) He further opined at page 224:

> "In considering the entire Revenue Act, I do not think that this provision affects in any particular the mandatory construction of [section 235a].

As I view the statute, this provision means that any of the other remedies for the collection of delinquent taxes may be pursued, until such time as taxes become delinquent for ten years. It then becomes mandatory, when taxes are delinquent for ten years, to comply with [section 235a]. It clearly appears that it was the intention of the legislature to make a final disposition of taxes which are delinquent for ten years, and to prevent taxes from becoming delinquent for more than ten years."[4]

In so concluding, the Attorney General reasoned:

"An examination of the provisions of [section 235a] discloses that in its enactment the legislature evidently intended to provide a method for the final disposition of tax delinquents in order that the county might profitably dispose of its delinquent properties and eliminate the expense of continually carrying such delinquent items on the tax books." 1943 Ill. Op. Att'y Gen. 220, 223.

It should again be emphasized that the question propounded to the Attorney General was whether it would be compulsory upon all counties, regardless of population, to comply with the provisions of section 235a. Although the question propounded to the Attorney General and the issue presently before this court are not identical, it may be persuasively argued that, in the words of the Attorney General, "any other remedies for the collection of delinquent taxes may be pursued, until such time as taxes become delinquent for [five] years. It then becomes mandatory, when taxes are delinquent for [five] years, to comply with [section 235a]." 1943 Ill. Op. Att'y Gen. 220, 224.

We are not suggesting, however, that an action for unpaid taxes once instituted cannot be pursued to final judgment if during the pendency of the action the taxes become delinquent for five years.[5] That issue is not before us. Nor are we suggesting that our interpretation should jeopardize an action for unpaid taxes and frustrate attempts to collect the full amount of unpaid taxes. That issue is likewise not before us. We hold only that the county collector is mandated by the Scavenger Act to "publish an advertisement giving notice of the intended application for judgment for sale of all tracts of lands and lots upon which all or part of the general taxes for each of 5 or more years are delinquent." We express no opinion as to whether every parcel included in such advertisement must be the subject of a judgment for sale; the Scavenger Act provides that "[n]o sale of lands or lots pursuant to this Section shall be final until confirmed by the Court * * *." Ill. Rev. Stat. 1977, ch. 120, par. 735a.

---

[4] Section 235a was amended by Public Act 80-1407, par. 1, effective August 25, 1978, to substitute 5 years for 10 years.

[5] As a practical matter the prosecution of an action for unpaid taxes commenced well before the fifth year of delinquency may not be reduced to final judgment by the fifth year of delinquency.

The State appears to argue that the scavenger sale fails to profitably dispose of tax delinquent properties. We are not unaware that real property tax delinquency in Cook County has been rising steadily. (Lawlor, at 2-3.) Although a portion of this increased delinquency may be attributed to an increase in the tax burden, the increase may also reflect serious problems in the tax collection apparatus. There are an increasing number of delinquent parcels failing to attract bidders at the annual tax sale. For example, Cook County Treasurer Rosewell reported that 40,266 parcels were not purchased at the annual tax sale for 1974 taxes and thus forfeited. This compares to 34,871 forfeitures for 1973, 20,601 for 1972 and 18,102 for 1971. (Lawlor, at 3.)[6] The result is that a growing number of parcels of land continue in the possession of property owners who do not pay their share of the cost of municipal services. Nor are we unaware that at the scavenger sale, sale is to the highest bidder, even though the bid may be less than the full amount of the taxes. The sale price is often low since the property has been in the hands of a tax delinquent property owner for five years and, in the case of improved property, is likely to be in a somewhat dilapidated condition. Between 1967 and 1973, the 6,000 parcels sold at the scavenger sale averaged bids of only $143. (Lawlor, at 8.) In terms of dollars, in 1971 there was $54,412,375.87 in uncollected property tax bills in Cook County. In 1973 the delinquency cost the county a net amount of $73,119,410.79. However, the State's apparent contention that the scavenger sale fails to profitably dispose of tax delinquent properties misconceives the function of this court. While we do not dispute that a revenue statute has, as its foundational purpose, the collection of taxes to defray the cost of governmental services, such matters as the effective implementation of the goals of the Revenue Act must be addressed to the General Assembly, which is entrusted with the duty of determining public policy and promoting the general welfare.

Based upon the foregoing, we conclude that the Scavenger Act's provision for the publication by the county collector of "an advertisement giving notice of the intended application for judgment for sale of all tracts of lands and lots upon which all or part of the general taxes for each of 5 or more years are delinquent" is mandatory. We hold, therefore, that the county collector could not lawfully omit from the advertisement certain properties because actions for the unpaid taxes were pending against the owners of those properties.

Reversed.

DOWNING and STAMOS, JJ., concur.

---

[6] Published public records have failed to provide more current statistics.