(No. 55907.—

*In re* APPLICATION OF EDWARD J. ROSEWELL, County Treasurer, Appellant (Harold S. Levin *et al.*, Appellees).

*Opinion filed July 6, 1983.—Rehearing denied September 30, 1983.*

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey, Deputy State's Attorney, and Thomas J. McNulty, Assistant State's Attorney, of counsel), for appellant.

Arvey, Hodes, Costello & Burman, of Chicago (Nathan M. Cohen, Eugene L. Griffin, Robert M. Sarnoff, Jeffrey I. Langer, of counsel, and Clifford E. Vickrey, law student),

for appellees Harold S. Levin *et al.*

Bernard Allen Fried, of Chicago, for appellee Aaron Szydlowicz *et al.*

James A. Rooney, of Chicago, for appellee Iver Johnson.

JUSTICE WARD delivered the opinion of the court:

This appeal presents the question of the authority of the circuit court to withhold property that has been tax delinquent for five years or more from a sale under section 235a of the Revenue Act of 1939, which section is commonly known as the Scavenger Act (Ill. Rev. Stat. 1979, ch. 120, par. 716a). The circuit court of Cook County, upon the motion of the county treasurer and collector, Edward J. Rosewell, removed certain tax-delinquent parcels from a judgment and order of sale that had been applied for by him under the Scavenger Act. The ground for the motion was that civil actions for delinquent taxes had already been brought by the board of commissioners of Cook County against the owners of these parcels pursuant to section 275 of the Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 756), and were pending. The appellate court, on an appeal filed by certain of the owners (the objectors), reversed the order removing the parcels from sale, holding that the Scavenger Act's provisions for sale of property that has been tax delinquent for five years are mandatory. (101 Ill. App. 3d 498.) The collector petitioned for leave to appeal under Rule 315 and alternatively under Rule 317 on the ground that the appellate court's decision raised for the first time a constitutional question regarding the separation of powers. The collector's petition was allowed. 73 Ill. 2d Rules 315, 317.

The collector filed the application for judgment and order of sale under the Scavenger Act on July 21, 1980. The application included all parcels upon which real estate

taxes remained unpaid for each of five or more years. On August 8, 1980, the circuit court entered a judgment and order of sale.

On August 27, 1980, the collector, at the request of his legal counsel, the State's Attorney of Cook County, moved the court to amend its judgment so as to exclude from it the parcels whose owners had already been named in suits to collect delinquent real estate taxes. The objectors opposed the motion, but the court on September 24, 1980, amended its judgment and deleted the parcels. The court subsequently confirmed the sale of the remaining parcels. It denied objections to the confirmation of sale filed by the objectors, who argued that their parcels should have been included in the sale.

The Revenue Act of 1939 (Ill. Rev. Stat. 1979, ch. 120, par. 482 *et seq.*) provides for proceedings against the delinquent taxpayer personally and also against the real property on which taxes are overdue. Section 27a (Ill. Rev. Stat. 1979, ch. 120, par. 508a) provides for personal liability for taxes, stating that an owner of real property on January 1 "shall be liable for the taxes of that year." Section 216 of the Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 697), on the other hand, provides for an *in rem* claim. It declares that real property taxes shall be "a prior and first lien" on the property, "superior to all other liens and encumbrances," from January 1 in the year in which the taxes are levied until they are paid or until the property is sold under the Revenue Act.

Statutory means of enforcing these tax obligations have been enacted. Section 235 of the Revenue Act (Ill. Rev. Stat. 1979, ch. 120, par. 716) provides for an annual sale for the full amount of taxes owed on tracts on which taxes have not been paid in any one year. Tracts offered for sale under this but not sold are "forfeited" to the State. (Ill. Rev. Stat. 1979, ch. 120, par. 727.) (The statutory "forfeiture" does not, however, involve any claim by the State to

title or possession. See Lawlor, *Real Property Tax Delinquency and the Rehabilitation of Multi-Family Housing Stock in Chicago, Illinois: The Role of the Collection Provisions of the Illinois Revenue Act,* 26 DePaul L. Rev. 1, 5 (1976).) Section 275 of the Revenue Act provides that the county may at any time bring a civil action in the name of the State against the property owner personally for taxes on property that has been "forfeited." (Ill. Rev. Stat. 1979, ch. 120, par. 756.) Too, should the property remain tax delinquent for five years or more, the Revenue Act provides for a so-called scavenger sale, which is involved here.

At the time of the sale here, the relevant section of the Scavenger Act provided:

> "[T]he County Collector annually *** shall in counties with a population of 2,000,000 or more, and shall in other counties if the county board by resolution so orders, *** publish an advertisement giving notice of the intended application for judgment for sale of all tracts of lands and lots upon which all or a part of the general taxes for each of 5 or more years are delinquent as of the date of the advertisement. *** The term delinquent also includes forfeitures. *** The County Collector shall make application for judgment for sale as provided in this Section and the Court shall give judgment for such general taxes, special taxes, special assessments, interest, penalties and costs as are included in the advertisement and appear to be due thereon after allowing an opportunity to object and a hearing upon the objections as provided in Section 235 of this Act, that such lands and lots be sold by the County Collector at public sale to the highest bidder for cash, notwithstanding the bid may be less than the full amount of taxes, special taxes, special assessments, interest, penalties and costs for which judgment has been entered. Upon confirmation, *a sale pursuant to this Section shall extinguish the lien of the general taxes, special taxes and special assessments for which judgment has been entered and shall extinguish all forfeitures therefor, and a redemption shall not revive the lien or the forfeiture.* ***
> ***

*** *The remedy herein provided is in addition to other remedies for the collection of delinquent taxes.* This Section shall be liberally construed so that the deeds herein provided for shall convey merchantable title." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 120, par. 716a.

The collector contends that the appellate court erred in holding that under the provisions of the Scavenger Act the court must enter an unalterable judgment for the sale of every parcel that has been declared tax delinquent for five years or more. The collector points out that, apart from a court's inherent judicial powers, a court, under the Act's explicit provisions, has authority to consider objections to a judgment and sale and to conduct hearings, and, of course, there is authority to enter appropriate orders. He says that for good cause, such as for fraud or irregularity, the trial court is not compelled to order a sale. Nor is a court, where prior suits against delinquent taxpayers to collect overdue taxes in full are pending, required to order a sale which predictably will bring only a small fraction of the tax indebtedness and may also require dismissal of the pending suits. The construction of the Scavenger Act that the objectors seek, the collector argues, would contradict the language and purpose of the statute and would sanction an unconstitutional interference by the legislature with the judiciary's authority to decide cases.

The objectors, on the other hand, stress the legislature's use of "shall" in providing that "the [c]ourt shall give judgment" for the taxes due and order a sale. They say that a mandatory construction is more in keeping with the apparent purpose of the Scavenger Act, to return tax-delinquent property to a status where it will generate revenue.

The collector is correct in his contention that under the legislative intendment the circuit court had discretionary authority to withhold the parcels of the objectors from the sale. It will not be necessary to consider the collector's ad-

ditional contention that the appellate court's holding has presented a constitutional question. "It is the established rule of this court that a constitutional question will not be considered if the case can be decided without doing so. [Citations.]" *In re Estate of Ersch* (1963), 29 Ill. 2d 572, 576-77.

The fundamental of statutory construction is to ascertain and then give effect to the intent of the legislature. (*People v. Robinson* (1982), 89 Ill. 2d 469, 475; *Town of City of Peoria v. O'Connor* (1981), 85 Ill. 2d 195, 203.) Regarding the construction of provisions in statutes as being mandatory or directory, Sutherland on Statutory Construction states:

"There is no universal rule by which directory provisions may, under all circumstances, be distinguished from those which are mandatory. The intention of the legislature, however, should be controlling and no formalistic rule of grammar or word form should stand in the way of carrying out the legislative intent. In the words of a court: 'Consideration must be given to the legislative history, the language of the statute, its subject matter, the importance of its provisions, their relation to the general object intended to be accomplished by the act, and, finally, whether or not there is a public or private right involved.' " 1A A. Sutherland, Statutory Construction sec. 25.03 (4th ed. 1972), quoting from *Wilcox v. Billings* (1968), 200 Kan. 654, 657, 438 P.2d 108, 111.

Sutherland also observes that "shall," except when expressing futurity, indicates a mandatory intent. The intent, however, it is stated, is not to be understood as mandatory if "the context otherwise indicates." (1A A. Sutherland, Statutory Construction sec. 25.04 (4th ed. 1972).) This court has recognized that while "shall" ordinarily suggests the mandatory, it may properly be construed in a directory sense to carry out what appears to be the intent of the legislature. *In re Armour* (1974), 59 Ill. 2d 102, 104 (the word "shall" does not have an exclusive, fixed or inviolate mean-

ing); *Cooper v. Hinrichs* (1957), 10 Ill. 2d 269, 272 (the word "shall" can be construed as meaning "must" and "may" depending upon the legislative intent).

The language of the provision in the Scavenger Act for the entry of a judgment and order of sale shows a legislative intent that the court was not to be without discretion and without the capacity to act judiciously. It provides for the entry of a judgment "after [the court's] allowing an opportunity to object and a hearing upon the objections as provided in Section 235 of [the Revenue] Act ***." Section 235 provides that the court shall consider the defenses of those against whom judgment may be entered and in a summary manner "pronounce judgment as the right of the case may be." (Ill. Rev. Stat. 1979, ch. 120, par. 716.) The court was not to be required to enter judgment and an order of sale regardless of circumstances and regardless of whether the public interest would be served. The mandatory construction urged by the objectors is not reasonable.

The civil actions against the property owners personally to satisfy the indebtedness for taxes are premised upon a "forfeiture." As we have seen above, parcels offered at the annual sale but not sold are "forfeited" to the State, and section 275 of the Revenue Act authorizes a civil action against the owner of property that has been "forfeited." (Ill. Rev. Stat. 1979, ch. 120, par. 756.) On confirmation of the sale following a scavenger sale, all tax liens and "forfeitures" are extinguished, notwithstanding the fact that the sale has been for less than the full amount of back taxes and notwithstanding that the sale may have been for a nominal amount. As quoted earlier in this opinion the statute reads:

> "[A] sale pursuant to this Section shall extinguish the lien of the general taxes, special taxes and special assessments for which judgment has been entered and shall extinguish all forfeitures therefor, and a redemption shall not revive the lien or the forfeiture." (Emphasis added.)

(Between 1967 and 1973 in Cook County, 6,000 items of property were sold at scavenger sales; the average bid was only $143. (26 DePaul L. Rev. 1, 8 (1976).)) As the collector points out, the objectors are urging that we view the Scavenger Act as operating to abort, in effect, the civil actions brought under section 275. The welcome consequence for the objectors of doing so would be that under the Scavenger Act the tax liens and forfeitures would be extinguished and the property of the objectors given a clean bill of tax health.

The objectors unreasonably ascribe to the legislature an intendment which would frustrate the public's efforts to collect the full amount of taxes due and would encourage tax delinquents to stall actions against them until the time for a scavenger sale of their property is reached; *i.e.,* after five years of nonpayment of taxes. (The relationship between tax delinquency and urban blight is discussed in J. Lawlor, *Real Property Tax Delinquency and the Rehabilitation of Multi-Family Housing Stock in Chicago, Illinois: The Role of the Collection Provisions of the Illinois Revenue Act,* 26 DePaul L. Rev. 1 (1976).) The legislature, however, did not include in section 275 any limitation as to the time within which suit against the delinquent taxpayer must be brought. The civil action for the tax indebtedness may be brought "at any time." (Ill. Rev. Stat. 1979, ch. 120, par. 756.) Moreover, that the Scavenger Act was not intended to frustrate the actions against the property owner is clearly expressed in the Act itself. The Act states: *"The remedy herein provided is in addition to other remedies for the collection of delinquent taxes."* (Emphasis added.) Ill. Rev. Stat. 1979, ch. 120, par. 716a.

The Scavenger Act is the legislature's device of last resort. A principal object of it is to restore the property to a tax-revenue-producing status. (*In re Application of Rosewell* (1981), 93 Ill. App. 3d 1106, 1108.) It assumes that the other available methods of tax collection have been ex-

hausted. The sale will be to the highest bidder, regardless of the amount of the tax delinquency. The action in debt procedure and the scavenger sale are remedial provisions. The former is intended to effect tax collections and to discourage the nonpayment of taxes. The scavenger sale is designed, as a last resort, to extinguish tax liens and forfeitures and to attempt to restore the property to a productive status. The two procedures must be read to complement and not to contradict each other. The legislature, realistically, did not intend that five or more years of overdue taxes would be satisfied by a bid of, say, $143 (26 DePaul L. Rev. 1 (1976)), if suits were pending to collect the entire amount of the overdue taxes plus interest. (The record does not disclose the tax indebtednesses of the tax objectors. It appears from the addresses that the properties, in the main, are in deteriorating areas of Chicago. Considering that the ownership is in trusts with numerous beneficiaries, it appears that the properties are multifamily houses.)

The trial court did not violate what we perceive to be the legislative intent which would permit the county to continue its attempt to compel the tax delinquents to pay their taxes in full. The elimination of their properties from the sale simply gave the county the opportunity to protect its claims for the payment in full of the overdue taxes. As we have seen, if the concerned property had been sold the lien for taxes and forfeitures would have been extinguished and the pending actions against the tax delinquents might have been subjected to dismissal on that ground. Whether that result should have followed is, of course, not before us on this appeal. It seems clear, however, that dismissal of the actions would have been sought by some objectors had the parcels been sold at the scavenger sale. The appellate court opinion notes: "The stipulation between the parties above described states that one of the owners [objectors] intends to file a motion to dismiss the action in debt

against him on the ground that the debt, if any, has been 'extinguished by the Scavenger sale.' "

Dismissal of the actions in debt would be another welcome consequence for the objectors. This is an additional reason for their complaint that their properties were removed from the scavenger sale.

Though enacted too late to be of effect here, we point out that the legislature has acted to correct the very deficiencies in the Scavenger Act that we have shown and discussed here. Through an amendment (Pub. Act 82—987, 1982 Ill. Laws 2471, 2473) which its sponsor described as "very important in [Cook County's] attempts to collect delinquent taxes" (82nd Gen. Assem., Legislative Day 127, June 23, 1982, at 229 (remarks of Sen. Netsch)), and which became effective September 9, 1982, the legislature removed from the Scavenger Act the provision that all forfeitures shall be extinguished upon confirmation of the sale. The amendment also provides that confirmation of a sale shall not affect the personal liability of the owner or prevent the maintaining of an action under section 275 for the collection of delinquent taxes. (1982 Ill. Laws 2471, 2473.) It seems not unlikely that this action by the legislature was taken in response to the appellate court opinion here. The content of the amendment shows that the legislature entertained the same views and concerns that we have expressed here, including the effect of the provision for the extinction of all forfeitures on actions brought for the collection of taxes under section 275. Earlier, in Public Act 81—1076 (1979 Ill. Laws 4091, 4092), the legislature amended the Act to provide: "No certificate of purchase [at a scavenger sale] shall be issued to any person who has not executed and delivered an affidavit to the County Clerk that such person has not bid upon any lot or tract of land at such sale who is the party or the agent of the party who is responsible for the payment of the delinquent taxes." That amendment was effective July 1, 1980.

In the same amendment, Public Act 81—1076, the General Assembly wisely changed the provisions governing redemption following a scavenger sale. Prior to this amendment, the Act permitted an owner whose property was sold at a scavenger sale to redeem the property by paying only the amount for which the property was sold, together with interest. At a scavenger sale properties are sold to the highest bidder, and the amount of the bid need not be in the amount of the taxes owed. As a result, properties could be sold for only a small fraction of the amount of taxes owed; the Act, however, specifically provided that a redemption did not revive the lien and forfeitures extinguished by confirmation of the sale. (1979 Ill. Laws 4091, 4092.) (At the time of this amendment, the Act still provided that confirmation of a sale extinguished all forfeitures (1979 Ill. Laws 4091, 4092).) In the amendment (the language of which was later clarified in Public Act 82—987, discussed above), the legislature provided that, except for single-family residential units, a tax-delinquent owner seeking to redeem from a scavenger sale must pay the amount of the delinquent taxes owed at the time of the sale, that is, he must satisfy the tax delinquency. 1979 Ill. Laws 4091, 4093.

This shows a determination by the legislature to deal with the problem of the permitted evasion of taxes by owners of tax-delinquent property and of the unwitting fostering of urban blight by deficiencies in the Scavenger Act. The 1980 amendment to the Act obviously was designed by the legislature to end the incredibly permitted practice of allowing tax-delinquent owners to re-acquire their own property free of forfeitures and tax liens following a sale under the Scavenger Act without satisfying their tax indebtedness. The amendments should discourage the sacking of residential properties by owners who deliberately fail to pay taxes, make no repairs, provide only minimal maintenance, ignore building code violations, and then are al-

lowed to re-acquire the property free from liens and maybe from personal liability for taxes.

Senator Nedza, the sponsor in the Senate of the bill that became Public Act 81—1076, in urging its passage, told the Senate: "Under the present scavenger sale system, there are many blatant abuses by property owners to avoid paying their taxes. Moreover, it is costing the counties millions of dollars in lost revenue, not to mention the loss in the valuable housing." He urged the Senate to "[close] the loop hole in the tax collection system which penalizes diligent taxpayers ***." 81st Gen. Assem., Legislative Day 74, June 27, 1979, at 163.

Another senator, rising in support of the bill, stated: "[W]e were all painfully aware that this process . . . this procedure, does, in fact, exist. What happens is *** you will get a large apartment building in the . . . the west side of Chicago, for instance and no taxes will have been paid year after year and after five years there is what's called a scavenger sale and I or one of my friends can go in and buy the back taxes for a dollar or two dollars or two dollars and fifty cents when the taxes, in fact, may have been ten thousand or twelve thousand or fifteen thousand dollars and then I can absolve myself from tax liability by purchasing for two dollars and fifty cents plus interest the amount of that bid." 81st Gen. Assem., 74th Legislative Day, June 27, 1979, at 163-64 (remarks of Sen. Rock).

We observe, too, that Public Act 82—987 (which removed the provision that confirmation of a sale extinguishes all forfeitures) not only confirms our apprehension of the possible effect of confirmation of a sale on the actions for debt, but supports, too, our understanding of the duties of the court under the Act. As we have stated, the objectors stress the use by the legislature of "shall" in describing the court's duty to order a sale, and stress that "shall" has also been used in describing the function of the

collector to give notice of his intended application for judgment of sale, a duty held to be mandatory in *People ex rel. Larson v. Rosewell* (1980), 88 Ill. App. 3d 272. Public Act 82—987 changed the Act, which provided that the collector "shall" give notice of the application, to provide that "it shall be mandatory for him" to do so. (1982 Ill. Laws 2471, 2472.) This supports our interpretation here of "shall." By adding that "it shall be mandatory for him" (the collector), the legislature showed its recognition that "shall" is not always to be equated with "mandatory." If this were not so, the legislature would have had no reason to change its language, especially after it had been judicially construed to be mandatory language in the case of collectors. Also, and very significantly, while the legislature added mandatory language in describing the duties of the collector, it did not do so in regard to the description of the function of the court. It left unchanged the provision that the court "shall" order a sale, retaining the language it considered required change in the case of collectors to show that their duties were mandatory.

The objectors note that section 1 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 1) provides that the Act applies to all civil proceedings except "other proceedings in which the procedure is regulated by separate statutes." They say that here the procedure is regulated by the Scavenger Act and therefore the Civil Practice Act was not applicable. We need not decide this question because, in any event, the court here can be said to have acted within its inherent authority. The General Assembly can enact laws governing judicial practice only when it does not unduly infringe upon the inherent powers of the judiciary. *Agran v. Checker Taxi Co.* (1952), 412 Ill. 145.

The objectors argue that there is no showing that any judgments obtained through the pending suits will be collectible. The argument is unconvincing. One may assume that the State's Attorney, as any other prudent attorney,

would have investigated prior to the institution of suit and have been satisfied that the filing of suit would be productive. It should be noted, too, that the objectors are only a very small fraction of those owners whose property was designated for the scavenger sale. The State's Attorney, prior to the institution of the Scavenger Act proceedings, must have been satisfied that the actions in debt against the objectors involved here would be productive.

The State's Attorney's brief says that the appellate court ruling exposes over 290 actions in debt to possible dismissal. These 290 cases seek to recover over $7 million in delinquent real estate taxes. The State's Attorney also says that in 1981 over 400 more actions in debt which seek collections of almost $8 million in delinquent taxes were filed. Obviously the question presented is not an isolated one.

Incongruously, considering that they have avoided for five years or more the responsibility of paying taxes, the objectors say that, unless the provisions of the Scavenger Act are held to be mandatory, there will be no assurance that the provisions of the Act will be carried out and the property restored to a tax-revenue-producing status. We need only observe that in instance after instance the legislature imposes duties upon public officials which typically are performed without default. The entire structure of government functions on the assumption that persons charged with public responsibilities will discharge those responsibilities.

It should be observed that simply because a parcel is not ordered to be sold in a given scavenger sale does not mean that its future sale is precluded. Property withheld from a sale may be included in a subsequent scavenger sale. The statute provides for the advertisement of the application for judgment and order of sale for tracts upon which taxes "for each of 5 *or more* years are delinquent." (Emphasis added.) Ill. Rev. Stat. 1979, ch. 120, par. 716a.

The two decisions principally relied upon by the objectors, and cited by the appellate court in its opinion, are simply not in point. Both consider the duties of the collector and not the powers of the court.

The appellate court's opinion states that it considered it unnecessary to consider in detail the points raised by counsel. The court simply said that *stare decisis* required that it reverse the orders appealed from. The court cited *In re Application of Rosewell* (1981), 93 Ill. App. 3d 1106, and *People ex rel. Larson v. Rosewell* (1980), 88 Ill. App. 3d 272. The appellate court, however, seriously misapprehended what those decisions involved. In *People ex rel. Larson v. Rosewell* (1980), 88 Ill. App. 3d 272, the court held that the collector was without discretion to omit tracts from his advertisement under the Scavenger Act of tax-delinquent property. The court said that because the purpose of the provision for notice of the collector's intention to seek judgment against the property was to inform owners of the delinquency and give them an opportunity to object to the judgment, and was not simply being a rule for the guidance of public officials, the county officers must strictly comply with the requirement for publication. The collector had omitted certain parcels from publication because there were pending actions against owners of those parcels. The court fully perceived, however, that the issue before it was not the question here. The court stressed:

"We are not suggesting, however, that an action for unpaid taxes once instituted cannot be pursued to final judgment if during the pendency of the action the taxes become delinquent for five years. That issue is not before us. *Nor are we suggesting that our interpretation should jeopardize an action for unpaid taxes and frustrate attempts to collect the full amount of unpaid taxes.* That issue is likewise not before us. We hold only that the county collector is mandated by the Scavenger Act to 'publish an advertisement giving notice of the intended application for judgment for sale of all tracts of lands and

lots upon which all or part of the general taxes for each of 5 or more years are delinquent.' We express no opinion as to whether every parcel included in such advertisement must be the subject of a judgment for sale; the Scavenger Act provides that '[n]o sale of lands or lots pursuant to this Section shall be final until confirmed by the Court ***.' Ill. Rev. Stat. 1977, ch. 120, par. 735a." 88 Ill. App. 3d 272, 278.

The citation of *In re Application of Rosewell* (1981), 93 Ill. App. 3d 1106, by the objectors is somewhat remarkable, for there the court observed that under the Scavenger Act the scope of judicial discretion regarding a sale is broad. In that case the county collector had received the highest bid at a scavenger sale, had struck off the property as sold, and had received tender of payment. The court said that the collector may not reoffer the property for sale. The court held that under such circumstances the collector was without discretion whether to report to the court for confirmation of the sale. The court contrasted the collector's responsibility in that respect under the Scavenger Act with that of the court. The circuit court, said the appellate court, has broad discretion during review of a sale. The appellate court cited *People v. Anderson* (1942), 380 Ill. 158, which involved the sale of real estate for delinquent and forfeited general taxes. This court observed in *Anderson*: "The rule is firmly established that the chancellor possesses a broad discretion in approving or disapproving a report of sale, and that his decision will not be disturbed unless there is a clear abuse of discretion." (380 Ill. 158, 163.) It also cited *Evans v. Hunold* (1946), 393 Ill. 195, where this court stated: "In cases of sales requiring the approval of the court, the chancellor has a broad discretion to confirm or disapprove such sales." 393 Ill. 195, 200.

For the reasons given, the judgment of the appellate

court is reversed and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE SIMON, dissenting:

An underpinning of the majority opinion is its conjecture that an action to collect unpaid taxes "might have" to be dismissed once a scavenger sale of the taxpayer's property occurs (97 Ill. 2d at 443), thereby relieving the property owner of personal liability for those taxes. This issue was not briefed by the parties either in this court or in the appellate court. The majority concludes, on the basis of the uncertainty it perceives, that the legislature could not have meant to require the county collector to include in a scavenger sale properties against whose owner an action to collect back taxes is pending. This possibility, however, is foreclosed by the clear statement in the Scavenger Act itself that "[c]onfirmation of the sale shall in no event affect the owner's personal liability to pay the taxes, interest and penalties as provided in this Act; nor shall confirmation prevent institution of a proceeding under Section 275 of this Act to collect the amount remaining due after the sale." (Ill. Rev. Stat., 1981 Supp., ch. 120, par. 716a.) This sentence was made a part of the Act by Public Act 82—987, paragraph 1, which became effective during the pendency of this appeal but was not brought to the attention of this court by either party. (See Ill. Ann. Stat., ch. 120, par. 716a, at 28 (Smith-Hurd Supp. 1982).) This provision would apply to the parcels and liabilities at issue in this case, as no scavenger sale involving them has yet been held and there has been no confirmation of any sale with respect to them.

Under the current and relevant version of the Scavenger Act the law is clear: A taxpayer who is delinquent in paying his property taxes is liable at all times for the amount of the

arrearage (see Ill. Rev. Stat. 1981, ch. 120, par. 508a ("[t]he owner of real property on January 1 *** in any year shall be liable for the taxes of that year")), and if he allows five years to go by without paying it he stands to lose his property too, provided that the property has been "forfeited" prior to that time under section 275 of the Revenue Act (Ill. Rev. Stat. 1981, ch. 120, par. 756) and provided that the various requirements of the Scavenger Act itself are fully complied with. This arrangement has the salutary effect of encouraging payment within the five years as well as of placing property on which taxes have been unpaid for more than five years in more responsible hands. *Schreiber v. County of Cook* (1944), 388 Ill. 297, 305; *In re Application of Rosewell* (1981), 93 Ill. App. 3d 1106, 1108.

I believe that the 1982 amendment which I have quoted was declaratory of existing law (see *Biggins v. People* (1880), 96 Ill. 381, 384 (strong *dictum*)). In any event five or more years of overdue taxes would never be "satisfied by a bid of *** $143" (97 Ill. 2d at 443) because the county itself is free to bid at such a sale for purposes of driving the price upward or of purchasing the property to offer at the next scavenger sale if the bids it receives are not to its liking, as well as because of important statutory safeguards incorporated in the 1978 amendments to the Act. These amendments require, except in the case of single-family residential units, that the amount to be paid for redemption be at least equal to all delinquent taxes on the property at the time of the sale. (Ill. Rev. Stat. 1979, ch. 120, par. 716a.) The amendments also provide that no certificate of purchase shall be issued to any person unless he executes and delivers to the county clerk an affidavit that he is not the party responsible for the payment of the delinquent taxes and is not bidding on the property as the agent for the party who is responsible.

However, the question of what the earlier law was can

have no bearing on this case. It is now moot. That law obviously no longer applies to the parcels which are the subject of this appeal. (See *People ex rel. Black v. Dukes* (1983), 96 Ill. 2d 273; *Madison Park Bank v. Zagel* (1982), 91 Ill. 2d 231.) This court's interpretation of what the earlier law was with regard to abatement can shed no light on the question this case poses, which is whether the Scavenger Act *as it currently reads* is mandatory or directory for purposes of a scavenger sale *which has yet to occur.*

The majority opinion comes to the conclusion that the Act was directory prior to the amendment stating that the collector's duty was mandatory largely as the result of its concern that to do otherwise might jeopardize the collection of the full or a substantial amount of tax debts that are overdue for more than five years. As there are no grounds for this fear under the present version of the Scavenger Act, which guards against such a possibility in so many words, there is no reason for saying, as the majority does, that the provision in the Act that the county collector "shall" apply for judgment for sale and that the circuit court "shall" give judgment after allowing a hearing on objections has other than a mandatory effect. I believe it would defeat the purpose of the Scavenger Act to hold it directory merely because the delinquencies in the instant case arose prior to the amendment of the Act. This is especially the case in view of the clear language of the amendment stating that the owner's personal liability is not affected by confirmation of a sale. This language supports the conclusion that actions in debt filed before the effective date of the amendment would not abate in the event of a scavenger sale which occurs after the effective date, as the scavenger sale in this case must.

I believe that this appeal has been rendered moot for another reason—the amendment to the Scavenger Act which the majority emphasizes in concluding that the Act is currently mandatory and not directory. Regardless of the word-

ing of the Act at the time the parcels in question were permitted to be withdrawn from the scavenger sale, the amendment which the majority emphasizes explicitly states that it is the mandatory duty of the collector to include in the application for the scavenger sale all properties on which taxes have gone unpaid for five or more years. Because the parcels which are the subject matter of this proceeding and which were removed from a scavenger sale several years ago on the application of the collector and have remained in status quo pending the resolution of this case fall into that category, it will be mandatory, in view of the amendment, for the collector to include them in the next scavenger sale. I do not, therefore, understand how anything worthwhile is accomplished by quarreling over whether the Scavenger Act was mandatory or directory at the time the parcels in question were withdrawn from the previous sale when they clearly must be included in a future sale. The sensible thing to do, as I see it, is to dismiss this appeal as moot and permit the current law to operate on the parcels in question, as it was intended to do. *People ex rel. Black v. Dukes* (1983), 96 Ill. 2d 273; *Madison Park Bank v. Zagel* (1982), 91 Ill. 2d 231.

The majority finds support for its position that prior to the amendment the Scavenger Act was not mandatory by pointing out that the amendment, although it made the duties of the collector mandatory by explicit language, did not use the same explicit language in describing the duties of the circuit court. The majority therefore postulates that since after the amendment the word "shall" is retained, unaccompanied by further mandatory language, in describing the function of the circuit court, the word "shall" wherever used in the Scavenger Act prior to its amendment was merely directory. The duty of the court, however, as set forth in the statute both prior and subsequent to the amendment, was to entertain objections of taxpayers and not objections of the

collector. Once the circuit court decides that the objections of the property owner lack merit, it is and always has been the court's obligation to follow the statute and "give judgment for *** sale" (Ill. Rev. Stat. 1979, ch. 120, par. 716a). To that extent, apart from whatever the statute might say, the circuit court judge is under a mandatory obligation to follow the law as set forth in the Act, for he is sworn to uphold the law. Further language in the statute making his duties mandatory would be surplusage and therefore unnecessary.

While perhaps the following discussion is academic in view of the amendments to the Scavenger Act discussed by the majority, as well as in this dissent, I believe that the act as it existed when the collector withdrew the parcels in question was mandatory and the collector had no authority, even at that time, to withdraw the parcels from the sale.

The scavenger sale procedure involves a six-step process. First, the collector publishes an advertisement giving notice of the intended application for judgment for sale of parcels which have been tax delinquent for the requisite time. Second, the collector applies for judgment for sale. Third, after hearing objections, the circuit court gives judgment ordering a public sale to the highest cash bidder. Fourth, the collector offers the property for sale. Fifth, the collector within the time prescribed by the statute files his report of the sale with the circuit court. Sixth, and last, the circuit court is requested to confirm the sale.

While the precise issue presented by this appeal— whether a parcel once included in the order of judgment and sale can later and prior to sale be deleted at the collector's request—was not decided in either *People ex rel. Larson v. Rosewell* (1980), 88 Ill. App. 3d 272, or *In re Application of Rosewell* (1981), 93 Ill. App. 3d 1106, the appellate court in both cases held that the particular stage of the Scavenger Act proceeding it was called upon to address was mandatory, and the majority does not appear troubled by those

results. In the former case, the appellate court, dealing with the first stage in the proceeding, held that the collector did not have discretion to omit property from the advertisement prescribed by statute giving notice of the intended application for judgment for sale of parcels on which taxes were owing for five or more years. In the latter case, which involved the fifth stage of the scavenger-sale proceeding, the appellate court held that where a properly conducted scavenger sale had been held and a bid received, the collector had no discretion to withdraw the offer for sale to give the county board the opportunity to submit a bid on a reoffer of the property even though the sale had not yet been confirmed by the circuit court. In that circumstance the collector was obliged to report the sale to the circuit court and request confirmation. I agree with the appellate court conclusions in *Larson* and *Application of Rosewell* that the first and fifth steps of the scavenger sale process are mandatory.

"Generally, the use of the word 'shall' is regarded as indicative of a mandatory intent" (*People v. Youngbey* (1980), 82 Ill. 2d 556, 562; see *Andrews v. Foxworthy* (1978), 71 Ill. 2d 13, 21). I find persuasive the fact that the Scavenger Act employs the word "shall" at the beginning of each step in the instructions for carrying out a scavenger sale except for the final step relating to application to the court for confirmation of the sale. By prefacing its description of each of the first five procedures with the word "shall," and in adopting the scavenger sale as a method of returning tax-delinquent property to the tax rolls so that it might become revenue producing, the legislature demonstrated its intention to adopt a mandatory procedure. Looking to the purpose of the scavenger-sale legislation, I find nothing to suggest that the word "shall," as repeatedly employed in the statute, should be regarded as indicating other than a mandatory intent.

In one of the provisions of the Scavenger Act the word "shall" is used twice in the same sentence. The provision in

question reads: "All such lands and lots *shall* be offered for sale in consecutive order as they appear in the delinquent list and the County Collector *shall* file his report of sale in the Court within 30 days of the date of sale of each tract of land or lot." (Emphasis added.) (Ill. Rev. Stat. 1981, ch. 120, par. 716a.) There appears to be no justification for offering parcels included in the scavenger sale in any order other than the one provided by the Act, that is in consecutive order as they appear in the delinquent list. In fact, orderly disposition demands such a procedure. I believe this compels us to construe the word "shall" as first used in the above-quoted provision as mandatory, and it does not make sense to interpret the word as mandatory as used in one part of a sentence or statute and directory as used in another portion. "Where a word is so used in one portion of a statute as to have a clearly defined meaning, the same word when used in another portion of the same statute" should be given the same meaning unless something in the context indicates the legislature intended the contrary. (*People v. Talbot* (1926), 322 Ill. 416, 422; see *Moran v. Katsinas* (1959), 16 Ill. 2d 169, 174; *People ex rel. Lipsky v. City of Chicago* (1949), 403 Ill. 134, 142; *Lawton v. Sweitzer* (1933), 354 Ill. 620, 625; 82 C.J.S. *Statutes* sec. 348, at 728-29 (1953).) As there is no indication to the contrary, I would apply a consistent interpretation. It would make little sense to construe as directory rather than mandatory the provision that the collector "shall" apply for judgment for sale and that the court "shall" give judgment after hearing objections, where the word "shall" has, as I have pointed out above, already been held by the appellate court in *People ex rel. Larson* and in *In re Application of Rosewell* to carry its ordinary mandatory meaning when used eight sentences before and four sentences after that provision in the same statute, and nothing in the context of the Revenue Act as a whole indicates otherwise.

In view of the purpose the legislature was seeking to accomplish, there is no reason for construing the word "shall" as if it were "may." To do so would make of the scavenger sale merely an alternative device for attacking tax delinquency instead of what I believe the legislature intended it to be—an ultimate procedure for clearing up delinquencies and restoring property to the tax rolls. The Scavenger Act provides that the remedy it affords is "in addition to other remedies for the collection of delinquent taxes." (Ill. Rev. Stat. 1981, ch. 120, par. 716a.) As I interpret this provision it means that the collecting authorities have discretion to pursue other avenues for collection until taxes become delinquent for five years. The collector is not, of course, required to wait for five years to obtain a judgment for unpaid taxes. He can proceed at any time after forfeiture. When the five-year point is reached, however, it becomes mandatory to proceed under the Scavenger Act as the most decisive step in combating the tax delinquency. It appears to me that the intention of the legislature was to take decisive action through a scavenger sale in dealing with properties which have remained delinquent for more than five years.

If discretion were vested in the collector to decide when and what parcels should be included in the scavenger sale or if discretion could be exercised by the court other than at the time it hears objections of the property owners or at the time its confirmation is requested, the purpose the legislature had in mind would be completely contravened. The Act provides no standards for the collector to follow if his responsibilities under the Act are discretionary rather than mandatory. Allowing the collector uncontrolled discretion in deciding which tax-delinquent parcels to include and which to exclude would open the door to the possibility of discrimination among various owners, a result the legislature obviously could not have intended, and one which would not benefit the public. The collector would be free to permit

property owners he preferred, many of whom might be judgment-proof, to continue to pocket the income from their properties, while they are allowed to continue to ignore their duty to pay real estate taxes by not being included in the scavenger sale. And even assuming that the State's Attorney has prudently investigated and decided prior to instituting suit that the proposed defendant is not judgment-proof, the State's Attorney may have reached an erroneous conclusion, and in any event this is no guarantee that the assets of the proposed defendant may not be dissipated during the pendency of the personal action. I do not regard such an arrangement as in the public interest when measured against the alternative that including the delinquent property in the scavenger sale might succeed in returning it to the tax rolls without in any way endangering any actions in debt the collecting authorities may choose to bring in view of the recent amendment referred to above. Problems with *in personam* actions to collect delinquent taxes were outlined in the law review article cited in the majority opinion, where the author observed:

"There are a number of unique problems with suing in personam. An obvious concern is for fairness on the part of County officials in choosing who, out of thousands of delinquents, will be sued in this way. Other difficulties involve adequate service of process and the legal ability to satisfy a judgment by reaching the personal assets of the beneficiaries of a land trust." J. Lawlor, *Real Property Tax Delinquency and the Rehabilitation of Multi-Family Housing Stock in Chicago, Illinois: The Role of the Collection Provisions of the Illinois Revenue Act*, 26 De Paul L. Rev. 1, 12 (1976) (hereinafter cited as Lawlor, *Real Property Tax Delinquency*).

These observations are borne out by inspection of the files of the clerk of the circuit court of Cook County in the cases involving the property the collector seeks here to exclude from the scavenger sale because of the pendency of

those cases. Those files reveal that service was not obtained on almost half of the individuals whose property was excluded because of pending suits for the collection of taxes, even though the complaints in those suits were filed and the summons issued in 1977, 1979 and 1980 with approximately three-quarters of the filings occurring in the two earlier years. By way of illustration of the kind of problems encountered, in People v. Exchange National Bank, No. 79 CO 5172, a case in which only a bank was named as defendant, the summons was directed to the bank at 6848 South Stony Island, Chicago, Illinois, an address at which the bank was never located. The summons in that case has not been served to this day. In both People v. Hutter, No. 79 CO 5035, and People v. Routt, No. 77 CO 2010, the circuit court clerk's files reveal that the property owner had moved to another State and had never been served. And in People v. Spencer, No. 79 CO 5134, the summons was directed to a nonexistent address and no other address was provided for service.

In addition, the collector does not appear to have been consistent in his choice of defendants in cases where the property was held in trust by a bank in years in which taxes on it were unpaid: in some instances the bank alone was sued, while in others the beneficiary was named as a defendant. The explanation for this difference in treatment is probably that the collector or the State's Attorney was unable to discover who the beneficiary was. This explanation brings into question the accuracy of the majority's statement that "[t]he State's Attorney, prior to the institution of the Scavenger Act proceedings, must have been satisfied that the actions in debt against the objectors involved here would be productive" (97 Ill. 2d at 448). Because this court has held that the trustee of a land trust is not liable for unpaid taxes (*People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479), the collector presumably would have sued the beneficiary

and not the trustee had he known the identity and address of the former. In the frequent instances in which the trustee alone was sued and the State's Attorney by interrogatories elicited the name of the beneficiary from the trustee, it is obvious that the State's Attorney, before filing the suit, did not know either who the beneficiary was or where he resided or both, and he therefore did not have enough information to satisfy himself that the action "would be productive."

More importantly, the observations contained in the law review article from which I have quoted above, combined with an examination of the circuit court clerk's files in the cases involving property the collector seeks to exclude from the scavenger sale, give me little confidence that orderly enforcement of the tax laws would be possible were the collector to rely primarily on *in personam* actions when taxes remain unpaid for more than five years, as he is free to do under the majority's holding that the scavenger sale provisions are merely permissive. I am unwilling to attribute this intent to the legislature, particularly in view of its repeated use of the word "shall" in the Scavenger Act.

The wording of section 275 of the Revenue Act is also helpful in construing the scavenger sale provision. Section 275 employs the word *"may"* in referring to the county board's authority to bring actions in debt to recover delinquent taxes. The use of that word indicates the legislature intended actions in debt as a permissible but discretionary means of recovering tax delinquencies. By way of contrast, the repeated use of the word "shall" with respect to property subject to sale under the Scavenger Act demonstrates the unambiguous intent of the legislature that properties be offered for sale after remaining delinquent for five years.

The collector argues that the scavenger sale can be had at any time after the action in debt proves unsuccessful, but this argument is answered by the Scavenger Act itself,

which provides, as set forth above, that delinquent parcels "shall be offered for sale in consecutive order as they appear in the delinquent list." This requirement can only be interpreted to mean that once property becomes tax delinquent for more than five years, it must be offered for sale each year until it is sold. It does not contemplate that the offer of a parcel for sale may be deferred until the collector or the county board has pursued other methods of collection.

The majority also observes that the Scavenger Act, if applied as mandatory, conflicts with article II, section 1, of the Illinois Constitution by directing the judiciary as to how cases must be decided, a violation of the separation-of-powers provision. This conclusion misconceives the limited role of the judiciary in a scavenger-sale proceeding.

A scavenger sale is similar to a foreclosure proceeding where the property subject to the sale is sold to the highest bidder. The Scavenger Act provides safeguards against the collector obtaining judgment against nondelinquent real estate which he arbitrarily chooses, thereby protecting the property owner against being deprived of his property without due process of law. The owner's due process rights, both substantive and procedural, are guaranteed by jurisdictional prerequisites which the circuit court is authorized and expected to enforce. The collector must first establish that the property has been tax delinquent for at least five years. Next, the property owner must receive notice and be given an opportunity to object and have a hearing on his objections. It is only if the court finds that the required delinquency exists and concludes that the property owner has no valid defenses to inclusion of his property in the scavenger sale that the court is required to apply the law and direct that the sale proceed. By that stage of the proceeding the court has fulfilled its role as guardian of the due process rights of the property owner.

The Scavenger Act does not tell the circuit court how it

must decide any proceeding relating to property which the taxing authorities are mandated to sell under the Act. It merely sets forth mandatory prerequisites to a foreclosure sale. Once the court decides these are met, it then becomes the court's responsibility to enter an order directing the sale to proceed. The statutory language directing that "the court shall give judgment for sale" becomes operative only after the court has found that the requirements for a sale under the Scavenger Act exist and that the collector has discharged his mandated duties under the Act.

*People ex rel. County Collector v. Jeri, Ltd.* (1968), 40 Ill. 2d 293, supports this view. That case involved an application for a tax deed which the trial court refused to issue. The reason for the refusal was the taxpayer's failure to attach a transcript of evidentiary findings to the court order as the statute required. The taxpayer's argument was that this requirement violated the separation-of-powers provision. The court rejected the argument, stating:

"[P]roceedings relating to tax sales, redemptions and deeds are entirely statutory in origin and nature. The section 266 amendment *** is but one of many statutory conditions upon which issuance of a tax deed is predicated. This requirement does not purport to direct how a court should decide cases nor does it circumscribe the power of a judge to determine facts and apply the law to them." (40 Ill. 2d 293, 301-02.)

Similarly, the Scavenger Act does not circumscribe the power of the court to determine facts and apply the law to them. In fact it contemplates that, at an early stage of the proceeding, the court will perform that very function. In addition, the Act provides that at the end of the proceedings, in confirming the sale, the court shall determine that there has been full compliance with the requirements of the statute.

The Scavenger Act was designed to effect the public pol-

icy of filling the public treasury at minimum expense to citizens generally. Statutes of this sort are usually given a mandatory construction when phrased in language which would permit it, on the theory that a construction of the statute as permissive only would defeat its purpose. (*State ex rel. Snow v. Farney* (1893), 36 Neb. 537, 54 N.W. 862 (tax statute similar to Scavenger Act); *State ex rel. Robinson v. King* (1974), 86 N.M. 231, 522 P.2d 83; see generally 2A Sutherland, Statutory Construction secs. 57.03, 57.04, 57.14, and especially sec. 57.20 (4th ed. 1973).) If inclusion in a scavenger sale is left to the discretion of the county collector, there would be no assurance of a remedy against a taxpayer who is delinquent for more than five years, in view of the difficulties I have already mentioned with regard to service of process as well as determining whether a suit will be productive, and in light of the prosecuting authorities' inability to proceed simultaneously against the literally thousands of tax delinquents who are candidates for civil suits for recovery of overdue taxes at any one time. (See Lawlor, *Real Property Tax Delinquency*, 26 De Paul L. Rev. 1, 12 (1976).) This would not comport, in my opinion, with the legislative judgment that the Scavenger Act is needed to provide a speedy and efficient remedy against delinquent taxpayers and to return delinquent properties to the tax rolls at the earliest opportunity. This is indicated by the fact that the period of delinquency before a property becomes eligible for a scavenger sale has been reduced by the legislature from 10 years to five. (Compare Ill. Rev. Stat. 1981, ch. 120, par. 716a (five years' delinquency sufficient to trigger a scavenger sale), with Ill. Rev. Stat. 1977, ch. 120, par. 716a (10 years' delinquency required).) The purpose behind this change was explained by Senator Hynes, now assessor of Cook County and then President of the Senate, as follows:

"[The amendment] is vital because it is going to end up saving substantial amounts of money for local govern-

ments and for the taxpayers especially in urban areas, and more importantly, it is going to help with the revitalization of our cities. At the present moment, many of these parcels of property are tax delinquent. They are unused and in fact, are unusable and this will reduce by five years the period of time necessary to get these properties back on the tax rolls and make them usable ***." Transcript of 80th General Assembly Regular Session, at 41 (June 22, 1978).

I believe that a mandatory construction of the Act is necessary to effect its purpose, and I therefore dissent.